[Sac. No. 5142. In Bank.—April 1, 1938.]

I. W. RAYNOR, Respondent, v. CITY OF ARCATA, Appellant.

Blaine McGowan, Bronson, Bronson & McKinnon and John H. Painter for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Frederick von Schrader, Assistant City Attorney, Bourke Jones, Deputy City Attorney, F. Bert Fernhoff, City Attorney (Oakland), John W. Collier, Assistant City Attorney, J. Kerwin Rooney, Deputy City Attorney, and John J. O'Toole (San Francisco), as *Amici Curiae*, on Behalf of Appellant.

E. S. Mitchell for Respondent.

THE COURT.—Plaintiff received personal injuries when his automobile was struck by an automobile of defendant city which was being operated by the fire chief in response to an alarm. From a judgment entered on a jury verdict assessing the damages of plaintiff in the sum of $5,000, defendant city prosecutes this appeal. The action was brought under section 1714½, Civil Code (now section 400, Vehicle Code), by which cities are made liable for injuries to person or property resulting from negligent operation of municipally owned motor vehicles by city officers, agents or employees.

The accident occurred in the intersection of Sixteenth and G Streets in defendant city. The Redwood highway proceeds along G Street at this point. Plaintiff was driving southerly along said highway at about 5:30 o'clock on the afternoon of March 20, 1933. The traffic was heavy on both sides of the highway. Plaintiff entered the intersection with his car

in second gear, at a speed estimated by him to be about twenty miles an hour.

The fire chief, James A. Wyatt, in response to a fire alarm, was proceeding easterly along Sixteenth Street. Plaintiff testified that he looked to the right and left as he entered the intersection, but did not observe the fire chief's car. He also testified that he heard no siren or horn sounded. He did not know what hit him until he recovered consciousness after the accident, but thought perhaps it was an aeroplane.

The fire chief's automobile was a Ford roadster painted red. The fire chief testified that when he heard the alarm, sounded as customarily by the blowing of a whistle at the California Barrel Company, he was at his home, a distance of five blocks from the intersection where the collision occurred. The number of blasts of the whistle indicated the general locality of the fire. As he proceeded easterly along Sixteenth Street the emergency red light on his car was lit and the siren was sounded continuously. The siren was a standard type used on fire equipment and was in working order. The speed of the chief's car was estimated by witnesses at fifty miles an hour.

Complainant alleged that the fire chief drove at an excessive speed; that he failed to stop or slacken his speed at the boulevard stop at Sixteenth Street entering the highway; that the chief's car did not have a proper or efficient siren, and that the chief did not sound a siren or other signal with sufficient distinctness to be heard.

Under our recent decision in *Lucas* v. *City of Los Angeles,* 10 Cal. (2d) 476 [75 Pac. (2d) 599], the vital issue in this case is whether the fire chief sounded his warning siren as he proceeded at a high rate of speed in response to the fire alarm. The plaintiff himself and the driver of the car immediately following his car testified that they heard no siren. Negative testimony of this sort is sufficient to create a conflict in the evidence as to whether a warning siren was in fact sounded. (*Thompson* v. *Los Angeles & S. D. B. Ry. Co.,* 165 Cal. 748 [134 Pac. 709]; *Keena* v. *United Railroads,* 197 Cal. 148 [239 Pac. 1061]; *Rogers* v. *City of Los Angeles,* 6 Cal. App. (2d) 294, 296 [44 Pac. (2d) 465].)

Nevertheless we are of the view that the judgment in favor of plaintiff must be reversed as being incompatible with the

law as declared in the Lucas case, *supra*. In the Lucas case, *supra*, the plaintiff was a guest in an automobile involved in an intersection collision with a police car responding to an emergency call. It was contended that the police car was being operated at an unlawful rate of speed and that the driver was negligent in failing to obey a mechanical signal at the intersection, which showed ''Stop'' for traffic moving in the direction of the police car, and ''Go'' for traffic moving in the direction of the car in which plaintiff was a guest.

■ Our decision in the Lucas case, *supra*, reversed a judgment for plaintiff. Our opinion states that no contention was made that the siren was not sounded. A warning siren having been sounded, negligence of the driver could not be predicated on his rate of speed or failure to obey the ''Stop'' sign. An authorized emergency vehicle responding to an emergency call is exempt from limitations of speed and other rules of the road, such as those relating to the right of way. The exemption from speed limits and right of way is statutory. (Secs. 120 and 132, Motor Vehicle Act, as amended by Stats. 1929, pp. 539, 542; later secs. 517 and 554, Vehicle Code; sec. 517 was repealed by Stats. 1937, p. 168, but see sec. 454, added by Stats. 1937, p. 168.) The exemption from other rules of the road has been established by judicial decisions, notably by *Balthasar* v. *Pacific Elec. Ry.*, 187 Cal. 302 [202 Pac. 37, 19 A. L. R. 452].

■ The provisions in sections 120 and 132, *supra*, to the effect that the exemptions there given shall not relieve the driver of an emergency vehicle of the duty to drive with due regard to the safety of the public means that the driver must, ''by suitable warning, give others a reasonable opportunity to yield the right of way . . . ''. (*Lucas* v. *City of Los Angeles, supra*.) The sections also provide that the exemption shall not protect the driver from ''an arbitrary exercise'' of the privileges there granted. But an arbitrary exercise of said privileges cannot be predicated upon the elements of speed and failure to observe other rules of the road where a warning has been given. ''In such cases speed, right of way, and all other 'rules of the road' are out of the picture.'' (*Lucas* v. *City of Los Angeles, supra*.)

■ In the instant case the evidence as to whether a warning signal was given was in conflict. The vice of the instructions given to the jury is that they authorize the jury to

predicate a finding of negligence on the fire chief's speed and failure to observe the boulevard stop even though the jury should conclude upon the conflicting evidence that a sufficient warning signal had in fact been given. The effect of the instructions was to authorize the jury to determine as a matter of fact whether in traveling at the rate of speed shown and in failing to observe the boulevard stop the fire chief had driven "with due regard for the safety of all persons using the highway" or had been guilty of an "arbitrary exercise" of the privileges accorded emergency vehicles.

The court also gave the following instruction: "You are further instructed that when operating a fire automobile on and over the streets, a greater amount of care is required than in those cases of the use of motor vehicles where the maximum limit of speed is fixed by the law." This admonition to the jury was repeated in the instruction immediately following, couched in slightly different phraseology. In view of the rule, declared in *Lucas* v. *City of Los Angeles, supra,* that the conduct of the driver of an authorized emergency vehicle responding to an emergency call is actionable only where it is in the nature of "wilful misconduct", the above instructions were prejudicially erroneous.

Although our recent decision in the Lucas case, *supra,* was rendered after trial of the action herein, said decision is declaratory of existing law applicable when the accident herein occurred. The effect of said decision was to settle the law, which theretofore had been in a state of confusion due to conflicting appellate court decisions.

If appellant city is correct in certain further contentions urged by it, then the action should not be retried under correct instructions, but entry of judgment for defendant should be directed. We are of the view that these further contentions cannot be upheld.

Appellant contends that a city cannot be held liable for *any* act of a member of its fire department committed while responding to a fire alarm, for the reason that under chapter 263 of the Statutes of 1929 (p. 568) the fireman himself cannot be held liable. Chapter 263 was approved by the governor on the same day as section 1714½, Civil Code, which was enacted as chapter 260 of the Statutes of 1929 (p. 565). Chapter 263 was as follows: "No member of a fire department or police department maintained by a county,

city and county, incorporated or unincorporated city, town or district, shall be held liable in *any* civil action for damage to persons or property occasioned by *any* act of such member arising out of the operation, in line of duty, of a motor vehicle of such department while responding to an alarm of fire or an emergency police call.'' (Italics ours.) (Now embodied in sec. 401, Vehicle Code.)

Section 1714½, Civil Code (now sec. 400, Vehicle Code) imposes liability on cities and other governmental agencies for negligent operation of motor vehicles by public officers and employees. The second paragraph of the section gives the public employer a right of subrogation to recover from the officer or employee the amount of any judgment recovered by the injured person against the public employer. The third paragraph authorizes the public employer to insure against the liability imposed. The effect of this section was to impose liability on the public employer for negligent operation of public vehicles in the performance of governmental, as well as proprietary, functions. The section contains no exemption from liability where the vehicle is a police or fire department automobile responding to an emergency call.

The decisions of the appellate courts are in conflict on the question whether a public employer may be held liable for ''negligent operation'' of a police or fire department car under section 1714½, Civil Code, when the operator himself is free from liability under chapter 263. In *Armas* v. *City of Oakland,* 135 Cal. App. 411 [27 Pac. (2d) 666, 28 Pac. (2d) 422], and *Tuten* v. *Town of Emeryville,* 139 Cal. App. 745 [35 Pac. (2d) 195], liability of the public employer is denied.

The doctrine of the cited cases is that when liability of the public employer rests solely on the doctrine of *respondeat superior,* that is, liability of an employer, itself free from blame, for the wrongful acts of an employee, a law which releases the employee must be construed as relieving the employer. Said decisions find that the right of the public employer which has been held liable in damages to recover from its employee the amount of the judgment against it, is an inseparable incident of the liability imposed on the public employer by section 1714½. Where the right over against the employee does not exist, which is the case where

chapter 263 applies, section 1714½ imposes no liability on the public employer, said decisions hold.

On the other hand, a contrary conclusion is reached in *Rogers* v. *City of Los Angeles,* 6 Cal. App. (2d) 294 [44 Pac. (2d) 465], and *Lossman* v. *City of Stockton,* 6 Cal. App. (2d) 324 [44 Pac. (2d) 397]. In those cases the vehicle was a police ambulance responding to an emergency call. Such a vehicle would seem to come within chapter 263 as a vehicle of the police department responding to ''an emergency police call''. In the Lossman case, *supra,* the relation of section 1714½ and chapter 263 of the Statutes of 1929 was discussed at length, it being assumed that the police ambulance driver was within chapter 263. In the instant case the fire chief was responding to a fire alarm and hence was plainly within chapter 263. The fire chief was not acting outside the line of his duty because the fire was on the other side of the street which marked the city limits. He was under a duty to respond to the alarm whistle blown within the city. It was not shown that he was aware that the fire was beyond the city limits. Furthermore, protection of lives and property within the city required his presence at the scene of the fire and the extinguishing of a fire scarcely over the line.

We regard the remarks made by the appellate court in the Lossman case, *supra,* as correctly declaring the law on this phase of the case. The court there said: ''It is a well-recognized rule that statutes upon the same subject matter should be read together and each given full force and effect as far as possible. The legislature recognized that members of the police and fire departments in the performance of their duties are often called upon to exceed the ordinary speed limit and take the right of way. If such employees were compelled to weigh the chances and assume a personal responsibility, speed and efficiency would be affected. The legislature, however, realized that such operation of motor vehicles on the streets did create a hazard to the general public and therefore provided that the city should be held liable when the exercise of governmental functions resulted in injury to its people. The legislature also at the same time authorized its governmental agencies to obtain insurance to indemnify itself against loss by such actions. If, too, an employee is unduly reckless or careless in the operation of the vehicle under his control the municipality still retains its rule-making and disciplinary

powers and can, as any private concern, under similar circumstances, exercise restraint over its employees.

"It cannot be argued that because the state deemed it expedient to waive its right of subrogation against its employees, it thereby denied a right of action against itself. Subrogation is the substitution of one in the place of another, and if for any reason the one in whose favor such subrogation runs cares to waive such privileges, no one can complain. 'Subrogation is considered as the creature of equity and is so administered as to secure real and essential justice without regard to form.' . . . " (6 Cal. App. (2d) 324, 331 [44 Pac. (2d) 397].)

■ We are mindful of the rule that statutes imposing a liability on governmental agencies in derogation of the common-law rule are to be strictly construed. But this does not confer upon courts the power to nullify legislation where the statute itself evinces a clear intention on the part of the lawmakers to depart from the common-law rule.

The liability of the city or other public employer still rests on the doctrine of *respondeat superior*. In order that the public employer may be held there must be a "negligent operation" of the vehicle by the employee. The fireman or policeman responding to an emergency call is relieved of personal liability for his negligence, but the city may be held therefor. It follows from the discussion in the earlier part of our opinion herein that there is a "negligent operation" of an authorized emergency vehicle responding to an emergency call only where the driver of such vehicle fails to give a timely warning, or otherwise makes an "arbitrary exercise" of the exemption from rules of the road which can be said to be wilful misconduct.

■ The cases which hold that after an ordinary private employee has been held not negligent, his private employer may not be held on the doctrine of *respondeat superior* are not controlling here. The basis of said decisions is that after it has been held that the employee is free from negligence it cannot be held in an action against the employer that such employee has been guilty of negligence. But in the situation before us the exemption of the employee does not rest on an adjudication of his freedom from negligence, but on the statutory declaration that he should be free from personal liability for his negligent acts. It is but the exercise of the

police power of the state, which inheres in sovereignty. Any exercise of this power which has a tendency to protect life and limb is in the interest of the public weal.

■ The plaintiff was not required to file a claim for his injuries with the city council within ninety days after the accident. The provisions of Statutes of 1931, page 2475 (Deering's Gen. Laws (1931), Act 5149, p. 2562), are not applicable herein, where the injury is alleged to have resulted from negligent operation of a public motor vehicle, rather than from the dangerous or defective condition of public property. Act 5150 (Stats. 1931, p. 2476) relates to liability of public officers, not to liability of the city or other governmental agency. (*Jackson* v. *City of Santa Monica,* 13 Cal. App. (2d) 376 [57 Pac. (2d) 226].)

For prejudicial error in the instructions given the judgment is reversed.