## KIRK et al. v. CITY OF MUSKOGEE.

No. 28351.    Oct. 18, 1938.

A. L. Brook and Chas. A. Moon, for plaintiffs in error.

W. F. Rampendahl, for defendant in error.

DAVISON. J. The present appeal involves the alleged error of the trial court in sustaining the demurrer interposed on behalf of the defendant to the petition of the plaintiffs.

The plaintiffs, who are the minor child and widow of one C. R. Kirk, deceased, filed this action to recover damages for his death, which occurred as a result of the collision of the automobile, in which he was riding, with another automobile at the intersection of K and Houston streets in the defendant city.

The substance of the material allegations of the petition is as follows: That K street extends in a northerly and southerly direction and Houston street extends in an easterly and westerly direction; that approximately five years before the accident a hard rubber stop sign, about two feet long, one-half inch thick, and eight inches in height, had been erected by the defendant city in the center of K street where said street intersects with Houston street, to notify all motorists who approached Houston street from the south on K street that Houston street was a "through" street; that according to a city ordinance of said defendant city, a motorist approaching the intersection from the south on K street would have the right of way over a motorist approaching said intersection from the west on Houston street, except that the stop sign on K street indicated that he was to stop before entering said intersection; that about two months before the collision, the stop sign in question had been allowed to become obscure and invisible by reason of having been worn even with the surface of the street, and it remained in that condition on the date of said collision; that on said day Kirk was riding as a guest in an automobile driven by one Silas Martin, and as said auto traveled north on K street approaching the intersection of said street with Houston street, both of its occupants observed another auto approaching said intersection from the west on Houston street; that notwithstanding this observation, they proceeded ahead into said intersection, because being nonresidents of the defendant city, they were unfamiliar with the fact that Houston street had been designated a "through" street, and were unmindful of the fact that the driver of the other car was relying upon Martin to stop the car in which they were riding before driving it into said intersection; that, as a consequence, both cars proceeded ahead until they collided in the center of said intersection with such force that Kirk was killed instantly.

The liability of the defendant city for Kirk's death is alleged to be due to its negligence in failing to maintain the stop sign on K street so that it would apprise motorists approaching said intersection upon K street that they should stop before entering said intersection, and it is argued that the city's neglect to maintain some such warning constituted a nuisance and amounted to a failure to keep its streets in a reasonably safe condition for travel.

The defendant denies liability on the ground that its negligence, if any, arose out of the performance of a governmental function, and that consequently it is exempt from liability therefor, and further contends that no nuisance was created thereby.

The plaintiffs attempt to bring the present case within the rule of municipal responsibility for the condition of its streets, but it can readily be seen that neglect in the regulation of traffic does not necessarily have anything to do with the physical condition of streets. There is no doubt that the regulation of traffic is a governmental function, and that no liability accrues on the part of a municipality for negligence in the performance of said function. See Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689; Cleveland v. Town of Lancaster, 267 N. Y. S. 673, 239 App. Div. 263; Martin v. City of Canton, 41 Ohio App. 420, 180 N. E. 78; Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778; Murphy v. Incorporated Village of Farmingdale, 252 App. Div. 327, 299 N. Y. S. 586; Carruthers v. City of St. Louis (Mo.) 111 S.W.2d 32; Shaw v. City of New York, 1 N.Y.S.2d 311; City of Rome v. Potts, 45 Ga. App. 406, 165 S. E. 131; W. H. Powell, Adm'r, v. City of Nashville, 167 Tenn. 334, 69 S.W.2d 894, 92 A.L.R. 1493, and annotation at page 1495; Berry (7th Ed.) Automobiles, sec. 4289. Compare Mengel v. City of St. Louis (Mo.) 111 S. W.2d 5; Mayor and Aldermen of City of Vicksburg v. Dr. H. H. Harralson, 136 Miss. 872, 101 So. 713.

This court is committed to the rule that a municipality is liable for damages sustained from defects in its streets, but there is a clear distinction between the failure of a city to keep its streets in a safe condition as regards physical defects therein and failure or neglect in regulating traffic thereon. This is aptly demonstrated by the Supreme Court of Missouri in the opinion rendered in Auslander v. City of St. Louis, supra, followed in Dorminey v. City of Montgomery, supra. After considering many cases from various jurisdictions in which municipalities were held liable for negligence in maintaining traffic markers, signs, and signals which constituted obstructions or defects in streets, the court said (56 S.W.2d 782):

"These cases, however, are to be distinguished from the present case, in that in each of them the plaintiff's injury resulted

from a collision with the signal itself, which the court held to constitute an obstruction to the street, rendering it unsafe for travel thereon. The defendant's liability in such cases, therefore, was based on a failure of the city to keep its streets in a reasonably safe condition for travel thereon by reason of defects in the physical condition of the same. In the present case, plaintiff's injury was in no way caused by a collision with the traffic signal, and it is not claimed that such signal itself constituted an obstruction to travel on such street or rendered the same unsafe. The injury here resulted from plaintiff's collision with the automobile of another traveler using this same street intersection, and plaintiff's complaint is not that the collision was caused by this signal itself, but only that such collision could and would have been averted had the defendant kept the signal light working so as to have warned the other party of plaintiff being on the crossing.

"There is a difference, however, between the physical condition of a street and its use by the public. The keeping of a street in a condition reasonably safe for travel thereon has reference to a physical condition, and is a different matter than the regulation of traffic on such street. The one relates to the corporate or proprietary powers of the city, while the other relates to its governmental or police powers. This distinction is pointed out in 43 C. J. 996, as follows: 'The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such duty an action will lie; but making and enforcing ordinances regulating the use of streets brings into exercise governmental and not corporate powers, and the authorities are well agreed that for failure to exercise legislative, judicial or executive powers of government, there is no liability.' This distinction is also mentioned in Healy v. Kansas City, 277 Mo. 619, 211 S.W. 59, 61, where it is said: 'But the maintenance of good order in the park, the prevention of dangerous conditions there caused by gathering crowds or by the lawless or imprudent conduct of individuals, is a governmental function. The two cases are as distinct from each other as is the case of the city allowing a dangerous hole to remain in a street differs from the failure of a police officer to arrest a bully who is painting the town red.' In Hanson v. Berry, 54 N. D. 487, 209 N. W. 1002, 1005, 47 A. L. R. 816, this distinction is pointed out thus: 'In our opinion, a holding that a municipality is liable on account of an unsafe condition of the streets, where such unsafety is due to no physical imperfection, would involve the modification of well-established principles of law'."

In the early case of Marth v. Kingfisher, 22 Okla. 602, 98 P. 436, 18 L.R.A. (N.S.) 1238, this court refused to extend the liability of a municipality for negligently allowing defects in its streets to a case where the cause of action alleged was the defendant's permission of a dangerous traffic condition on its streets, upon the theory that the defects in streets for which liability accrues are those which relate solely to inert or structural defects or obstructions. In the latter case, the following rule was quoted with approval from the opinion in the case of Dudley v. Flemingsburg, 115 Ky. 5, 60 L.R.A. 575, 103 Am. St. Rep. 253, 72 S.W. 327, 1 Ann. Cas. 958:

"There are two general principles underlying the administration of government of municipal corporations: The one is that a municipal corporation, in the preservation of peace, maintenance of good order, and the enforcement of the laws for the safety of the public, possesses governmental functions, and represents the state. The other is where the municipal corporation exercises those powers and privileges conferred for private, local or merely corporate purposes, peculiarly for the benefit of the corporation. Under the former, the city is not liable for the malfeasance, misfeasance, or nonfeasance of its officers. Under the latter it is."

The plaintiff contends further, however, that aside from the issue of negligence the disintegration of the "stop" sign in question to the extent that it failed to serve the purpose for which it was erected constituted a nuisance, and that the defendant city is liable for the damages brought about thereby. We are referred to our decisions in Oklahoma City v. Tytenicz, 171 Okla. 519, 43 P.2d 747; Oklahoma City v. Miller, 179 Okla. 363, 65 P.2d 990, and others for the basis of the defendant's liability for the maintenance of a nuisance regardless of whether same arose out of a governmental or a corporate function. In the former case it was held:

"Where a municipal corporation creates or permits a nuisance by nonfeasance or misfeasance, it is guilty of tort, and is liable in damages to any person suffering special injury therefrom, irrespective of the question of negligence; and such liability cannot be avoided on the ground that the municipality was exercising governmental functions."

In Martin v. City of Canton and W. H. Powell, Adm'r, v. City of Nashville, supra, it was also contended that the defective traffic signs involved created nuisances, but the courts in those cases declined to uphold

said argument. A nuisance, as defined by Oklahoma Statutes, sec. 11489, O. S. 1931, "consists in unlawfully doing an act, or omitting to perform a duty. * * *" In the present case, counsel for the plaintiff fail to point out any misfeasance or nonfeasance on the part of the defendant whereby its acts or failure to act could be brought within the rule of liability in the Tytenica Case, supra. The city is not charged with any wrongful affirmative act in bringing about the disintegration of the "stop" sign. We are not shown wherein the city's failure to repair or replace the sign constituted an omission to perform a legally enforceable duty. Where there is no duty, there can be no nuisance, within the statutory definition thereof. Indeed, it could not seriously be contended that the broken sign was the direct cause of Kirk's collision with the other car, when it is so obvious that all that could sensibly be argued is that the failure of the sign in its dilapidated condition to fulfill its purpose merely allowed the existence of a traffic hazard which may not have existed had it served its purpose. The meeting of vehicles at the intersection of K and Houston streets in the condition out of which the collision occurred, and in all probability this condition existed before the stop sign was erected. There was no legally enforceable duty upon the city to enact traffic regulations to govern the movement of vehicles at this intersection, nor to enforce or continue such regulations once they were made. It would, of course, be absurd to say that the city of Muskogee could be liable for the damages herein sought, if, on the day before the alleged collision occurred, it had in a lawful manner and through the proper agency entirely removed the stop sign at said intersection. No one would say that the defendant lacked this power or that in the exercise thereof it would incur liability for damages arising out of the movement of traffic at said intersection thereafter; nor do we know of any law, and we are cited to none, which would require that the city give notice of the change in said traffic sign so that the drivers of vehicles on Houston street would cease to rely thereafter upon the requirement that traffic on K street stop before crossing or entering said intersection. If the city can be held to no duty of stopping traffic before same enters Houston street, how can it be said to be under any duty or obligation to maintain a sign designed to accomplish such a purpose? Police and traffic regulations of such a nature are purely discretionary governmental functions, and the difference between the true rule and the one for which plaintiff contends lies in the difference in the meaning of the terms "function" and "duty." If a municipality were held to the duty of performing efficiently all of the functions which are within its power to exercise, a new code of municipal liability would be necessary and cities would be subject to liability for failing to exercise various functions which now are purely discretionary. To hold the defendant liable in the present case would be to say, in effect, that a municipality is subject to liability whenever it fails to furnish a citizen the police protection necessary to save him from injury arising out of various and sundry traffic hazards. Since there was no legal obligation upon the city of Muskogee to keep the traffic sign standing at the corner of K and Houston streets in said city, no liability accrues when said sign is removed or broken, outside of the liability for injuries directly caused by it as a defect in the street as distinguished from a traffic regulator.

In accord with the views herein expressed, it is our opinion that no cause of action against the defendant was alleged in plaintiff's petition upon either of the theories advanced and the trial court committed no error in sustaining the demurrer thereto. The order sustaining said demurrer is therefore affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, GIBSON, and HURST, JJ., concur. PHELPS and CORN, JJ., absent.