ROBERT JAMES, ADMINISTRATOR (ESTATE OF ROBERT JAMES) *v.* THE CITY OF WATERBURY ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued March 6—decided April 16, 1940.

*Francis McDonald,* with whom was *Pasquale De-Cicco,* for the appellant (plaintiff).

*J. Gregory Lynch,* with whom was *Edward J. Mc-Donald,* for the appellee (defendant).

JENNINGS, J.  Plaintiff's intestate was killed crossing East Main Street in Waterbury.  The evidence, taken in the aspect most favorable to the plaintiff, discloses the following situation: East Main Street in Waterbury runs in a general easterly and westerly direction, is about forty-seven feet wide and is one of the main traffic arteries.  Approximately three thousand cars and an equal number of pedestrians pass the point of accident as an hourly average.  Mill Street meets East Main Street on the south but does not cross it, and about seventy-five feet east of this point Cherry Street enters it from the north.  Traffic at these intersections was intended to be controlled by two traffic lights, each on twelve foot standards, one located on the easterly corner of Mill Street and the other on the westerly corner of Cherry Street.  The lenses in each standard were arranged vertically, red on top, yel-

low and green. For several months before the accident the mechanism of both lights had been out of order, of which the city had notice. The city kept a steady yellow light in each standard during this period. This sometimes confused operators of out of town cars.

The only crosswalk on East Main Street in this vicinity ran from the westerly corner of Mill Street northerly to the opposite curb. This crosswalk was designated by yellow lines extending about twelve feet toward the center of the street from each curb. There were no stop signs or caution signals other than the yellow lights at these intersections and, at the time of the accident, no traffic officer was on duty.

On October 4, 1936, the plaintiff's decedent, a seven year old boy, was crossing East Main Street on the crosswalk from north to south when he was struck and killed by a car operated by the defendant Hall who was proceeding westerly.

On these facts the plaintiff claimed that the city created and maintained a nuisance in not painting the lines defining the crosswalk all the way across the street and in maintaining a steady yellow light. In the absence of any statutory requirement that lines designating a crosswalk must be painted and maintained for the full width of the street and of any evidence indicating that their absence in the center of the street was a source of danger, there was no basis for a finding of nuisance on this point. We are not obliged to ignore the obvious fact that paint wears off the surface of asphalt from weather conditions and traffic. In view of the heavy traffic conditions, the designation of the crosswalk was a sufficient compliance with General Statutes, § 395. The crosswalk was a natural one in that it was an extension of the westerly sidewalk of Mill Street, which fact was to that extent a

warning to motorists that pedestrians might cross at that point.

No theory has been advanced by the plaintiff which would justify a jury in finding the steady yellow light to be a nuisance. During the disrepair of the traffic light system at this point the city had but two alternatives open. It could kill the light or install a steady one. Its choice in keeping the yellow light burning was the prudent one under the circumstances. No statute forbade this course of action. The plaintiff claimed it confused out of town drivers and that they sometimes waited for the light to change. This result could hardly be said to increase the hazard to pedestrians and certainly could not have accelerated traffic. A jury could not reasonably come to the conclusion that the steady yellow light was a nuisance. *Kirk* v. *Muskogee*, 183 Okl. 536, 83 Pac. (2d) 594, 596. The refusal to set aside the directed verdict for the city was correct.

During the trial the plaintiff offered the evidence of several witnesses to the effect that there had been frequent minor accidents between automobiles at these intersections, consisting principally of scraping of fenders, for the purpose of showing a dangerous condition. The testimony of two of these witnesses was heard in full, in the absence of the jury. The court ruled that evidence of minor collisions between automobiles was irrelevant to reflect conditions confronting a pedestrian and offered to hear any witness whose testimony would reproduce the situation surrounding the plaintiff's intestate and Hall in any comparable degree. The ruling was correct. In order to make such testimony admissible, conditions must be substantially similar. *Tager* v. *Sullivan*, 113 Conn. 417, 419, 155 Atl. 704; *Wray* v. *Fairfield Amusement Co.*, 126 Conn. 222, 226, 10 Atl. (2d) 600. Danger to pedestrians is not neces-

sarily indicated because automobiles had been involved in minor collisions at the same intersection.

The remaining assignments of error are not pursued in the brief.

There is no error.

In this opinion the other judges concurred.