## PRESLEY v. CITY OF ODESSA.

### No. 4860.

Court of Civil Appeals of Texas.
El Paso.

May 28, 1952.

Rehearing Denied June 18, 1952.

Bolling, Smith & Allen, Lubbock, for appellant.

Malvern G. McDonald, Odessa, Strasburger, Price, Kelton, Miller & Martin, Dallas, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the District Court of Ector County sustaining an exception to the petition and dismissing the case.

The suit was by Wanda Presley, a minor, through her father as next friend, to recover damages for personal injuries sustained in a collision between a car in which she was riding and a fire truck operated by the City of Odessa and answering a fire call on the occasion of the accident. The accident occurred at the intersection of Pearl and Grant Streets in the City of Odessa. The fire truck was going south on Grant and the automobile west on Pearl. There was a traffic light at the intersection and the automobile at the time of the accident had the green light and the red confronted the fire truck, according to the allegations contained in the petition. There were various grounds of negligence alleged such as excessive speed, a lack of control, failure to keep a proper lookout, failure to give warning signals, defective horn or warning devices, etc. As we understand plaintiff's position they concede ordinarily ordinary negligence in such a case will not support a recovery, but they further alleged the city failed to install a master switch to control fire lane signals at street intersections and especially at the intersection involved in this suit, and so failed notwithstanding it had been warned and notified of such a condition, and that such failure and condition constituted a nuisance; that such failure was negligence and the proximate cause of the injuries and damage, and was without due regard to the safety of the public and to Wanda Presley; that the operation of the signal lights in the manner pleaded and the failure to install a master switch and the operation of the fire truck in the manner set out all combined to create a dangerous physical hazard, condition and nuisance, and the failure to abate such nuisance was negligence and a proximate cause, and such failure after such notice and warning was without due regard for the safety of plaintiff and were all arbitrary acts in disregard of the safety

of the plaintiff. On oral argument it was asserted these last mentioned allegations and facts under the provisions of law applicable in such cases constitute the crux of the case and thereon it hinges.

Three points of error are briefed, the first of which is the Court erred in sustaining defendant city's so-called special exception. The exception is as follows, to-wit:

"Defendant specially excepts to Plaintiff's Fourth Amended Original Petition in its entirety and says that it is apparent upon the face thereof that Plaintiffs have no cause of action herein against this Defendant, since the facts, as alleged in the Petition, show conclusively that any of the acts of omission or commission charged against the Defendant in this case were entirely in connection with governmental function of the Defendant, and this Defendant therefore prays that this exception be sustained and that the Plaintiffs' suit be dismissed."

Plaintiffs' position is the exception is a general demurrer. Rule 90, Texas Rules of Civil Procedure abolishes general demurrers and provides that any defect, omission or fault in the pleading shall be specifically pointed out. Rule 91 requires that special exceptions point out intelligibly and with particularity the insufficiencies of the pleadings excepted to. In the instant case the petition sets out plaintiffs' complaints with exactness and great particularity and the exception complains of no deficiencies but on the contrary asserts the facts pleaded show conclusively that every act of commission or omission of the defendant were entirely in connection with the governmental function of the defendant. In other words the sufficiency of the petition is conceded, but it is said the facts do not constitute a cause of action and do not fix liability because they conclusively show all the acts complained of were done in the performance of a governmental function. Plaintiffs were not cut off from any right but by their failure to undertake to amend

conceded they could not further plead. The rules supra are in the interest of justice and if no injustice has been done the error complained of, if error, would be harmless. If defendant's position be correct otherwise then the error, if it be error, is harmless. Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983. This is somewhat like a judgment rendered on a motion for a summary judgment, or a trial to the Court on an agreed statement of facts, and it would be an idle thing to reverse the case on an error of procedure where no injury is done and the agreed facts would not support a judgment to the contrary.

The other two points are, that the Court erred in sustaining the so-called special exception in effect holding that the accident resulted from the exercise of a governmental and not a corporate function, and in sustaining the exception based on the contention the petition showed on its face the city was acting in a governmental capacity and, therefore, not liable, whereas, under the pleaded facts such might have been the case and the city still liable.

■■■ These points are predicated, if we understand them correctly, primarily on the propositions the operation of the signal lights without a master switch to signify and give notice of the use of the street as a fire lane and the flashing of the green light in front of the car in which Wanda was riding constituted a nuisance on the street, and that under the provisions of Art. 801, subdivision (N) Vernon's Ann.P.C., the failure to install the master switch under the alleged facts was arbitrary and without due regard for the safety of the public, and of Wanda, to her injury. It is our opinion these propositions have been decided adversely to the contention of the plaintiffs in the case of Baker v. City of Waco, Tex. Civ.App., 129 S.W.2d 499, no writ history, in accordance with the generally accepted rule laid down by the authorities that the operation of signal traffic lights is a governmental function and cities are not generally liable for the negligent operation thereof. The nuisance question was there presented,

but the provision of the Penal Code is not discussed.

We think the provisions of the law are not susceptible to the application sought to be made. The statute accords the right-of-way to the emergency vehicles there named while being operated as such with the proviso emphasized by the plaintiffs and relied upon by them, that the same "shall not protect the driver or operator of any such vehicle or his employer or principal from the consequence of the arbitrary exercise of this right to the injury of another". The statute has nothing to do with the installation of traffic signals, it it is thought, but relates to the exercise of the privilege and right to disregard the rules of the road. Under those provisions the operators and public owners of the emergency vehicles are relieved from the consequences of a disregard of the rules of the road when the vehicles are operated as such. The right or privilege is dependent upon a due regard for the safety of the public and a nonarbitrary exercise of the right and privilege extended.

There is no pleading or contention, as we understand it, the fire truck entered the intersection against the red light without due regard for the safety of the public or that it was so driven against the light arbitrarily, but on the contrary the allegation is the fire truck was answering a fire alarm. The complaint is, as above noted, the action of the city in failing to provide a master switch, under the pleaded facts, was arbitrary.

For a discussion of similar provisions of the Civil Code of California see Lucas v. City of Los Angeles, 10 Cal.2d 476, 75 P.2d 599, and the cases there cited.

For the reasons indicated it is our conclusion the judgment of the trial court is correct, and it is affirmed.

McGILL, Justice.

I concur in the opinion of Associate Justice SUTTON except the next to the last

paragraph thereof. It has been definitely decided that the operation and maintenance of traffic signals is a governmental function for the negligent performance of which a municipality is not liable in the absence of a statute. In addition to Baker v. City of Waco cited in the opinion, see Kirk v. City of Muskogee, 183 Okl. 536, 83 P.2d 594, annotated in Negligence Cases Annotated, Vol. 4, New Series, p. 280.

Article 801(N) of the Penal Code is as follows:

"Police patrols, police ambulances, fire patrols, fire engines and fire apparatus in all cases while being operated as such shall have the right-of-way with due regard to the safety of the public; provided that this provision shall not protect the driver or operator of any such vehicle or his employer or principal from the consequences of the arbitrary exercise of this right to the injury of another."

It has been suggested that this Act does not specifically and certainly undertake to change the common-law rule of liability and fix on municipal corporations a new liability, that is a civil liability for the exercise of the privileges extended, without due regard for the safety of the public and the arbitrary exercise thereof to the injury of another. This construction ignores and renders meaningless the words of the statute: "shall have the right-of-way with due regard to the safety of the public" and of the proviso "this provision shall not protect the driver or operator of any such vehicle or his *employer* or *principal* from the consequence of the arbitrary exercise of this right to the injury of another."

The Legislature unquestionably was aware of the fact that the "employer or principal" of the driver or operator of "police patrols, police ambulances, fire patrols, fire engines and fire apparatus" while being operated as such is usually if not always a municipality; also that at common law such municipality is not liable for the arbitrary operation of such vehicles

when operated in furtherance of a governmental function. It could hardly have been the intention of the Legislature to impose a penalty on municipalities for a criminal offense committed by an employee thereof; therefore if the purpose of the statute was not to impose a civil liability on municipalities the language employed is meaningless. Plaintiff alleged:

"that said servant of said City then and there did negligently drive and manage said fire truck in this, that he drove the same at an excessive and reckless rate of speed, to-wit, at the rate of more than sixty miles per hour against a red light, and through an intersection upon which a green light was showing, and that he failed to slow down or make any attempt to reduce his speed as he approached said intersection and red light; and *that he failed to blow his horn or sound an alarm, and if such signal and alarm was given, which plaintiffs do not admit, it was not given in such a volume as to be audible to plaintiff, Wanda Presley, nor to the driver of the car in which she was driving;* that said horn or siren was not blown, or the same was defective; that he failed to keep a proper lookout, but that he drove recklessly and in utter disregard of the safety of plaintiff Wanda Presley." (Emphasis supplied.)

This pleading was sufficient as an allegation of facts which showed that the driver of the truck did operate it without a due regard to the safety of the public and that his conduct was an arbitrary exercise of the rights conferred by the statute.

The dictionary definition of the word "arbitrary" is not conclusive. The word must be construed with reference to the context of the statute and the purpose sought to be attained by it. Some light is thrown on its true meaning as well as the meaning of the words without "due regard to the safety of the public" in a well-considered opinion by the Supreme Court of California, Lucas v. City of Los Angeles,

10 Cal.2d 476, 75 P.2d 599, 602. It is there said:

"The expression 'with due regard for the safety' of all persons using the highway was explained in the Balthasar case [Balthasar v. Pacific Electric R. Co.] where the court said, 187 Cal. 302, at page 311, 202 P. 37, 41, 19 A.L.R. 452: 'It is evident that the right of way of fire apparatus over other vehicles is dependent upon "due regard to the safety of the public" only in so far as such "due regard" affects the person required to yield the right of way. Notice to the person required to yield the right of way is essential, and a reasonable opportunity to stop or otherwise yield the right of way necessary in order to charge a person with the obligation fixed by law to give precedence to the fire apparatus.' This is the only reasonable interpretation that the statute will bear. If the driver of an emergency vehicle is at all times required to drive with due regard for the safety of the public as all other drivers are required to do, then all the provisions of these statutes relating to emergency vehicles become meaningless and no privileges are granted to them. But if his 'due regard' for the safety of others means that he should, by suitable warning, give others a reasonable opportunity to yield the right of way, the statutes become workable for the purposes intended.

"(8) The expression 'arbitrary exercise of the privileges' has also caused some confusion. Since the vehicles are excluded from the restrictions of speed and right of way, negligence cannot be predicated on those elements if proper warning has been given. These are among the 'privileges' which are granted by the statutes. An arbitrary exercise of them may rest upon the question whether an emergency in fact existed. The statute has determined this question in part by the limitation in section 120 to cases where the emergency vehicle is engaged in the chase of violators of the law or in response to a fire alarm. Members of the fire and police departments are relieved from civil liability when 'responding to an alarm of fire or an emergency police call.' Thus, if such a vehicle is being operated in response to a fire alarm, excessive speed alone is not an arbitrary exercise of these privileges. If these privileges were exercised in returning from a fire, or for some private purpose of the operator, it might be a case of an arbitrary exercise of them. Such is the effect of the rulings in Hopping v. Redwood City, 14 Cal.App.2d 360, 58 P.2d 379, and Von Arx v. [City of] Burlingame, 16 Cal.App.2d 29, 60 P.2d 305, where the facts disclosed that the public vehicles were not being operated in response to emergency calls at the time the injuries were inflicted. In David's 'Municipal Liability for Tortious Acts and Omissions,' page 141, the author advances the view that 'the practical purpose of this phrase was to cover the cases in which the authorized emergency vehicle is not en route to the bedside of a sick man, the scene of the crime or the location of the fire; but where the drivers, by virtue of the character of the vehicle and by use of its siren, maintain nonnecessary speeds and drive with abandon of the usual rules of the road, when there is no need. This is the case where the fire engine is returning from the fire, in the absence of any new call or emergency; where the engine of the motor vehicle is being warmed up or tested; when the policeman is making routine runs with no criminal in sight or immediate contemplation. To the instances there noted where this limitation might apply could be added one where the operator has given the required warning but sees that another has not heard or heeded it; under those circumstances it might be an arbitrary exercise of the privileges to continue on into an inevitable collision. This situation might raise an issue of fact similar to that involved under the last clear chance doctrine; the negligence of the operator of the emergency vehicle would then rest

solely upon his arbitrary exercise of his privileges and not upon his disregard of the ordinary speed and right of way.

"(9–12) Another view of the meaning and application of this expression is that it is similar to the charge of 'wilful misconduct' in the ordinary guest cases." See also Raynor v. City of Arcata, 11 Cal.2d 113, 77 P.2d 1054.

In other words, the petition alleged facts from which a jury should determine whether the driver of the fire truck was guilty of an arbitrary exercise of the privileges given by the statute, and if so the city would be liable, absent contributory negligence of the driver of the car in which plaintiff's daughter was riding. These views find some support in Walker v. Houston Electric Co., Tex.Civ.App., 155 S.W.2d 973, wr. ref.

██ I concur in the disposition of the case on the sole ground that Art. 801(N) of the Penal Code was repealed by Chapter 421 of the Acts of the 50th Legislature, Regular Session 1947, p. 967 et seq., designated as a "Uniform Act Regulating Traffic on Highways" and appearing as Art. 6701d, V.A.C.S. This was a comprehensive act regulating traffic on highways as shown by its emergency clause. Sec. 2(d) defines

"(d) Authorized Emergency Vehicle. Vehicles of the fire department (fire patrol), police vehicles, and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the police commissioner or the chief of police of an incorporated city."

Section 75 is as follows:

"Sec. 75. Operation of vehicles and street cars on approach of authorized emergency vehicles. (a) Upon the immediate approach of an authorized emergency vehicle equipped with at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of such vehicle and/or when the driver is giving audible signal by siren, exhaust, whistle, or bell:

"1. The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

"2. Upon the approach of an authorized emergency vehicle, as above stated, the motorman of every street car shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

"(b) This section shall not operate to relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway."

It will be observed that Section 75 at least impliedly requires the driver of an emergency vehicle to give audible signal—which his failure to do convicts him of operation without due regard to the safety of the public—and of arbitrary exercise of privileges granted him under Art. 801(N), P.C., in the view of the California court. Section 75(b) is worded similar to the proviso of Art. 801(N), P.C., but omits any reference to the "employer or principal" of the driver of an authorized emergency vehicle. Unquestionably this statute was dealing with the same subject matter as dealt with in the proviso of Art. 801(N), P.C., i. e., the liability of the driver or operator of emergency vehicles therein specified and intended to embrace all the law upon the subject dealt with. It is true that Sec. 75(b) by omitting any reference to the "employer or principal" of the driver is not repugnant to Art. 801(N), P.C., but this is not essential for it to effect a repeal of Art. 801(N), P.C., by implication. 39 Tex.Jur. Sec. 80, pp. 148–149, quoted in Luse v. City of Dallas, Tex.Civ.App., 131 S.W.2d 1079,

loc. cit. 1084(5–8), wr. ref. See also Meek v. Wheeler County, Tex.Civ.App., 125 S.W. 2d 331, affirmed, 135 Tex. 454, 144 S.W.2d 885; State v. Houston Oil Co. of Texas, Tex.Civ.App., 194 S.W. 422, wr. ref.

Therefore, Art. 801(N), P.C., was implied-ly repealed by Sec. 75(b), Chap. 421, Acts of the 50th Legislature, Regular Session 1947, p. 967 et seq. Therefore, I concur in the affirmance of the judgment.

PRICE, C. J., authorizes me to state that he concurs in the concurring opinion.