Stuart B. YOUNG, Administrator of the Estate of Audley F. Howard, Deceased, Appellant,

v.

CHICAGO ROCK ISLAND AND PACIFIC RAILROAD CO. a corporation, et al., Appellees.

No. 46740.

Supreme Court of Oklahoma.

Sept. 30, 1975.

O. A. Cargill, Jr., Edward Goldman, Jack R. Bard, Oklahoma City, for appellant.

Walter M. Powell, Municipal Counselor by Patricia Sellers, Asst. Municipal Counselor and Rhodes, Hieronymus, Holloway & Wilson by Gary C. Bachman, Oklahoma City, for appellees.

BARNES, Justice:

The present appeal involves the alleged error of a portion of the Court of Appeals opinion which characterized the act of Appellees in maintaining a warning signal device at the intersection of a city street and railroad line as the voluntary performance of a safety measure rather than a governmental function.

For clarity and brevity we will hereinafter refer to Appellee, City of Oklahoma City, as the "City."

The single issue to be decided is whether the installation and maintenance of the battery-powered warning signal device installed by the City outside the railroad right-of-way was the performance of a proprietary rather than a governmental function. The essential background facts are as hereinafter related.

Appellant (plaintiff) Stuart B. Young, as Administrator of the Estate of Audley F. Howard, brought suit against Appellee (defendant) for the wrongful death of his decedent, to recover for alleged acts of negligence in maintaining said battery-powered warning device. Appellant alleges in his Second Amended Petition that on March 21, 1971, at approximately 11:00 p. m., the deceased was operating a truck in a northerly direction on Delmar Gardens Avenue within the Oklahoma State Fair Grounds. As he crossed the railroad tracks owned and operated by the Chicago Rock Island and Pacific Railroad Company, his vehicle collided with a train, resulting in injuries which subsequently proved fatal.

Initially, Appellant sought recovery from the Chicago Rock Island and Pacific Railroad Company (co-defendant, and hereinafter referred to as the "Railroad"). Thereafter, Appellant joined State Fair of Oklahoma, Inc., City, and the Oklahoma City Public Property Authority (Authority), a trust, as defendants in the District Court. The trial court sustained the demurrers of the City and the Authority. The Court of Appeals sustained the dismissal of the Authority, but reversed the dismissal of the City.

Appellant alleges that at the time of the accident the warning signal device failed to function properly because the batteries had been removed. The record reflects that the City's employees undertook the responsibility of installing newly charged batteries at regular intervals.

The record further indicates the warning device was installed by the City outside the Railroad's right-of-way and that no railroad crossing warning device was installed by the Railroad on its own right-of-way as required by 66 O.S.1971 § 124, which reads:

"Every railroad corporation operating a line of road within this State must erect suitable signs of caution at each crossing of its road with a public highway."

The Appellant contends that the Appellee was engaged in the performance of a proprietary rather than a governmental function for the following reasons: (1) that the battery-powered railroad crossing signal was erected in the Fair Grounds, which is a park from which income is received by the City; and (2) that the City, in maintaining and serving the signal, was doing so for pecuniary gain, and, therefore, was acting in a proprietary capacity.

On the other hand, Appellee argues that its acts of negligence, if any, arose out of the performance of a governmental function and were in the course of traffic regulation, pursuant to the police powers delegated to the municipality by the state.

The trial court dismissed the action as to City and Authority upon a finding that the installation and maintenance of the warning signal device was the performance of a governmental function. Thereafter, the court overruled Appellant's Motion to Reconsider the sustaining of the demurrers. However, demurrers of Appellees, State Fair and Railroad, were overruled, and the action against them was stayed pending disposition of the issue herein.

Upon an appeal from the trial court's order, the Court of Appeals held that, while the act of maintaining the warning signal at a railroad crossing partakes of a traffic regulation, it is more reasonably characterized as a safety measure imposed by statute on a private railroad corporation. The court found the fact that the City directly or indirectly chose to undertake to perform certain safety measures did not alter the character of such acts as being first and foremost a private corporate responsibility rather than a governmental function. From such adverse ruling, Appellee petitioned for certiorari.

■ It is fundamental that a city has two classes of powers. The first is proprietary, ministerial or corporate, in the exercise of which the city is liable for the negligence of its employees. The second class is governmental, and in the exercise of this function the city is not liable for the negligence of its employees.[1] See *City of Ardmore v. Hendrix,* Okl., 348 P.2d 497 (1960), and *Oklahoma City v. Taylor,* Okl., 470 P.2d 325 (1970). No question exists as to the division of powers and the rule applicable to each. However, it is occasionally difficult to determine which rule shall apply to a given state of facts.

In support of his position, Appellant cites previous decisions such as *Tulsa v. Goins,* Okl., 437 P.2d 257 (1967), *City of Sapulpa v. Young,* 147 Okl. 179, 296 P. 418 (1931), and *Adams v. United States,* D.C., 239 F.Supp. 503 (1965). A reading of these cases discloses they are not in point as none involved alleged negligence by the city resulting in accidents on a public thoroughfare or failure to properly maintain a railroad crossing signal or traffic installation. Accordingly, they have no application to the instant action.

■ Appellant's allegation that Appellee was acting in a proprietary capacity in installing and maintaining the warning device in a park is refuted by the case of *Ard v. Oklahoma City,* Okl., 382 P.2d 728 (1963). In that case we said that although, generally, a facility maintained for pleasure, amusement and recreation of citizens is held by the city in a proprietary rather than governmental capacity, the rule was not applicable to a park fallout shelter, the construction and operation of which was in the interest of public safety and defense. By analogous reasoning, it is our opinion that while the State Fair Grounds is maintained for the recreation of the public, the installation and maintenance of the battery-powered railroad crossing device in the instant case was in the interest of public safety and defense.

For reversal, Appellee urges us to apply principles set forth by this Court in *Kirk v.*

1. Except for a limited lifting of liability by the "Governmental Tort Liability Act," 11 O.S. 1971 § 1751 et seq.

City of Muskogee, 183 Okl. 536, 83 P.2d 594 (1938), City of Ardmore v. Hendrix, Okl., 348 P.2d 497 (1960), and White v. City of Lawton, Okl., 373 P.2d 25 (1961), which speak of a municipality's power to regulate traffic on a public thoroughfare as a governmental function within the police power delegated to it by the state. We think there is merit to this contention.

In Kirk, supra, a rubber stop sign placed at the intersection of "K" and Houston Streets was permitted by the city to become worn until it was obscure and invisible, having been worn even with the street surface. As two cars approached said intersection, one driver failed to stop before entering and collided with a second car in the middle of the intersection, resulting in the death of his passenger Kirk. With reference to the liability, we said in the syllabus:

"The alleged failure of a city to maintain a traffic sign in such a manner that it will apprise the drivers of vehicles of their duty to stop at a street intersection will not support an action for death resulting from a collision between two automobiles at said intersection."

In the body of the opinion we said:

" * * * There is no doubt that the regulation of traffic is a governmental function and that no liability accrues on the part of a municipality for negligence in the performance of said function."

The Kirk case was cited in Avey v. City of West Palm Beach, 152 Fla. 717, 12 So. 2d 881 (1943), in which the defendant city permitted a stop-and-go traffic light system to remain out of order without repair for 24 or 48 hours. The court held:

"A traffic light signal system is usually for the interest and safety of the users of the streets of a municipality. It is installed for the sole public benefit. It is in effect the substitution of a signal for a policeman in the regulation of traffic on the streets. It cannot be said that the installation and maintenance of such a system is for the sole benefit of the city, but is for the benefit of the public and its safety when using the streets. See 43 C.J. page 964, par. 1745." (Emphasis ours)

See also Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778; Martin v. City of Canton, 41 Ohio App. 420, 180 N. E. 78; Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689; Sandmann v. Sheehan, 279 Ky. 614, 131 S.W.2d 484; Baker v. City of Waco, Tex.Civ.App., 129 S.W.2d 499; Vickers v. City of Camden, 122 N.J.L. 14, 3 A.2d 613; Parsons v. City of New York, 248 App.Div. 825, 289 N.Y. S. 198; and Lakoduk v. Cruger, 47 Wash. 2d 286, 287 P.2d 338.

In City of Ardmore v. Hendrix, supra, cited by Appellee, we held that a city in regulating and maintaining traffic control signals at street intersections was performing a governmental function, rendering it immune from liability to an injured motorist. In that case the city failed to arrange for traffic signals to turn red toward all traffic when a police vehicle was approaching an intersection while in the performance of answering an emergency call.

The Appellant argues that a municipality does not have the police power to regulate and control railroad crossings within the city limits. However, the warning signal device which is the subject of this action was installed outside the railroad right-of-way and was erected as a precautionary measure for the protection and safety of the traveling public. It cannot be inferred from evidence in the record that the City was taking over the Railroad's duty to erect safety devices at their crossing on their own right-of-way, which, under the supervision of the Corporation Commission, is mandatory pursuant to 66 O.S.1971 § 124. To the contrary, we find that the precautionary measure taken by the City was to serve the general health, safety, and welfare of the public and to be "in addition to" any similar warning devices to be installed by the Railroad Company. Furthermore, the evidence in no

way reflects pecuniary gain to the City, as Appellant contends.

It is our opinion that this case is a proper one for application of the rule and principles set forth in *Lopez v. Southern Pacific Company*, 499 F.2d 767 (1974) from the United States Court of Appeals for the Tenth Circuit. In that case plaintiff filed suit against the railroad, and the railroad filed a third-party complaint against a city alleging plaintiff's injuries were proximately caused by the city's willful negligence, including failure to construct and maintain a reasonably safe crossing and approach and failure to install and maintain adequate warning signs and signals at the intersection of the city street and railroad line.

In *Lopez* the railroad had granted the city an easement, and the city had installed and maintained stop signs at the crossing of the railroad tracks and city street. The stop signs were properly installed at the time of the truck-train collision at the crossing, and the Tenth Circuit held:

> "Nor do we believe the City was responsible for the signals at the railroad crossing; generally it is the railroad's duty to provide adequate warnings at its own crossings."

With reference to the city's liability to heirs of persons killed in the train-truck collision, the Court further held:

> "Without any statutory authority imposing a duty on the City to install and maintain railroad signs on crossings owned by the railroad, we do not believe the City is liable for inadequate warning devices."

Thus, we find the burden of the asserted failure of the Railroad in the instant case to fulfill its statutory duty to erect suitable crossing signals cannot be thrust upon the City to make it liable for the Railroad's asserted negligence.

Finally, we note the distinction this Court correctly pointed out in *Kirk v. City of Muskogee,* supra, 83 P.2d on page 597 of that opinion, between the liability of a municipality for the performance of a "function" as compared to the performance of a "duty":

> "If a municipality were held to the duty of performing efficiently all of the functions which are within its power to exercise, a new code of municipal liability would be necessary and cities would be subject to liability for failing to exercise various functions which are now purely discretionary. To hold the defendant liable in the present case would be to say, in effect, that a municipality is subject to liability whenever it fails to furnish a citizen the police protection necessary to save him from injury arising out of various and sundry traffic hazards."

In view of the foregoing, it is our opinion that the Appellee installed and maintained said warning signal device for the purpose of traffic regulation and for the safety and defense of the public. We find Appellee's acts were for the common good of all without the element of special corporate benefit or pecuniary profit. We thus hold Appellee acted only in a governmental capacity, pursuant to the police power delegated it under Article 18, Section 2, of the Oklahoma Constitution.

Accordingly, Appellee's Petition for Certiorari is hereby granted, and the decision of the Court of Appeals is reversed insofar as it conflicts with the views expressed herein. Trial court's order affirmed, and cause remanded.

WILLIAMS, C. J., and DAVISON, IRWIN, BERRY, LAVENDER and SIMMS, JJ., concur.

HODGES, V. C. J., dissents.