[Civ. No. 16885. First Dist., Div. Two. Dec. 19, 1956.]

ARTHUR DEFLAY DAVIDSON, Appellant, v. COUNTY OF MARIN et al., Respondents.

Thomas L. Berkley, Robert P. Brorby, Craig Z. Randall and Frederick L. Harvey, Jr., for Appellant.

W. O. Weissich, District Attorney, and Haley, Thomas & Buresh for Respondents.

KAUFMAN, J.—This is an appeal by plaintiff, Arthur Deflay Davidson, from a judgment, after jury verdict in favor of defendants and respondents, Marin County and Frank Machado, in an action for damages for the death of Youler Davidson, wife of appellant, and for personal injuries to appellant, alleged to have arisen out of a collision between appellant's automobile and respondent county's fire truck driven by respondent Machado. No personal judgment was sought against respondent Machado. Judgment was rendered in favor of appellant on respondents' cross-complaint.

The accident occurred on August 22, 1953, at about 7:30 p. m. at the intersection of United States Highway 101 and the Tiburon-Mill Valley Road (State Route 52), known as the Alto Wye intersection. Appellant Davidson and his wife were driving in a southerly direction on United States High-

way 101 and Frank Machado, captain of a Marin County Fire Department substation, was driving a half-ton pickup truck, owned by Marin County in an easterly direction on Route 52 in response to a call reporting a fire. The truck was equipped with two red lights, front and rear, and a siren on the front. United States Highway 101 at the Alto Wye intersection with State Route 52 was on the date of the accident six lanes wide, having two northbound and two southbound lanes for through traffic, a storage lane for northbound traffic for left turns westward, as well as a storage lane for southbound traffic for traffic turning eastward. Some distance north of this intersection a service road extends from the westerly edge of United States Highway 101 in a southwesterly direction to intersect State Route 52 at a point west of the Alto Wye intersection, forming a triangular area between said road and the highway which is generally used for parking vehicles. There is a hill to the north of the intersection, and at a point between its crest and the Alto Wye intersection there is a flashing amber light facing southbound traffic. The highway is downgrade from the crest of the Alto hill to the intersection. State Route 52 is generally level having but a slight incline in its approach to the intersection. All traffic at the intersection is controlled by signal lights. The posted speed limit on United States Highway 101 in this area is 45 miles per hour.

When respondent Machado received the call that there was a fire at a restaurant known as the Blue Fountain, located on the easterly side of United States Highway 101, he left his home which was some 8 blocks northwest of the Alto Wye intersection. He drove the fire truck down Tower Drive to its intersection with State Route 52, turned east on State Route 52, passing to the right of several vehicles which were stopped thereon, headed in an easterly direction. Machado testified that he believed that he had been traveling at between 30 to 35 miles per hour as he entered the intersection, but slowed down upon entering it. In the hospital after the accident, Machado stated that he had been traveling between 5 and 10 miles per hour. When he was 400 to 500 feet from the intersection the signal light showed amber. The witness Williams, who resided to the northeast of the intersection, had observed that all traffic about the intersection had stopped as the fire truck entered it with the exception of one vehicle proceeding southward in the inside fast lane of United States Highway 101. This was appellant's car which collided with the left front of the fire truck.

Machado testified that the blinking red lights on the truck were placed in operation when he left his home. He sounded the siren continuously for the last 200 feet up to the intersection. Several witnesses who observed the approach of the truck for several hundred feet saw the red lights burning. The witness Thompson who followed the truck stated that the siren was sounding on Tower Drive, and that he heard it as he followed. Kirkpatrick, whose car was parked in the northbound storage lane, heard the siren. The witness Williams, referred to above, heard the siren, although he was inside his home on the opposite side of the intersection. The Perrys in the car some 120 feet behind appellant's, heard the siren. Mr. Perry saw the fire truck approaching on State Route 52. Perry stated that the signal for southbound traffic was green before appellant entered the intersection and was green at the time of the collision. Witnesses placed the speed of the fire truck as it entered the intersection variously at 8 to 10, 12 and 15 miles per hour.

Appellant testified that as he drove over the crest of the hill north of the Alto Wye intersection he heard a siren, but that he heard no siren after that. He was traveling at a speed of 30 miles per hour, and when he was about 300 or 400 feet from the intersection, the traffic signal turned green, that he looked both east and west, saw only one or two cars headed easterly, and continued on to the point of collision. He did not at any time prior to the collision apply his brakes. Machado was rendered unconscious as a result of the crash. When Machado later spoke to appellant in Marin General Hospital, appellant said "my wife told me so." Appellant's wife died as a result of her injuries.

Appellant contends that the trial court erroneously instructed the jury that there is a negligent operation of an emergency vehicle only where the driver of such vehicle fails to give a timely warning or otherwise makes an arbitrary exercise of the exemption from the rules of the road which can be said to be wilful misconduct. It is appellant's contention that even though the required warnings are given, ordinary negligence, such as failing to keep a proper lookout, may be sufficient to impose liability upon the county. Section 454 Motor Vehicle Code provides as follows:

"The driver of an authorized emergency vehicle shall be exempt from those provisions of this code herein set forth under the following conditions:

"(a) Said exemptions shall apply whenever any said vehicle

is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm.

"(b) Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others. Under the circumstances hereinabove stated, any said driver shall not be required to observe those regulations contained in Chapter 3 or in Chapters 6 to and including Chapter 13 of Division 9 of this code, but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section."

Having read the foregoing section to the jury, the court instructed that the exemption applied to those sections of the Vehicle Code regulating speed, use of different lanes, overtaking and passing, rights-of-way, rights and duties with respect to pedestrians, street cars, safety zones, standing and parking, and then stated:

"It follows that when there exist the conditions which said statute requires as a basis for said exemption it is not negligence for the driver of such an emergency vehicle to disregard the rules from which he thus is exempted, unless he is guilty of an arbitrary exercise of the privileges embraced in that exemption.

"It is equally important to note, however, that the exemption does not apply if any one of the conditions upon which it is based is, in fact, absent, and in such a case the driver of the emergency vehicle has no privileges over other drivers on the highway. It then is his duty to obey the laws that apply generally to the use of the highway and he is held to the same duty of exercising ordinary care."

The jury was then instructed as to what would constitute an arbitrary exercise of the privileges given an emergency vehicle by section 454, and told that "Whether or not the driver of an emergency vehicle has complied with all the conditions necessary to bring him within section 454 of the Vehicle Code, and whether or not he arbitrarily exercises his privileges as granted to him under said section is a question of fact for you, the jury, to determine." It is clear, there-

fore, that the court left to the jury the determination of whether or not the driver of the fire truck had fulfilled the conditions which gave him the exemption, and whether, if he did enjoy the exemption, he had arbitrarily exercised the privilege.

Despite the clear language of section 454, appellant argues that even though the fire truck may have given the statutory warning, which would give the driver the benefit of the exemption, he can still be held liable for ordinary negligence for failing to keep a proper lookout. The Supreme Court cases have, however, clearly held to the contrary. In *Lucas* v. *City of Los Angeles*, 10 Cal.2d 476 [75 P.2d 599], it was held that when the statutory signals have been given, all matters concerning ''speed, right of way, and all other 'rules of the road' are out of the picture; the only questions of fact, in so far as the public owner is concerned, are first, whether there was an emergency call within the terms of the statute; second, whether the statutory warning was given, and third, whether there was an arbitrary exercise of these privileges.'' (And see *Raynor* v. *City of Arcata*, 11 Cal.2d 113 [77 P.2d 1054].) In *Reed* v. *Simpson*, 32 Cal.2d 444 [196 P.2d 895], it was argued that if the driver of the emergency vehicle was proceeding at a moderate speed, his ''failure to keep on the lookout and avoid the dangers of traffic, which was concedely heavy at the time, contributed proximately to the fatal collision.'' But the court there stated that since the driver in the performance of his official duty was exempted from the restriction of speed, right of way, and all other ''rules of the road,'' his lack of due care cannot be predicated on those elements if the ''reasonably necessary'' warning contemplated by the statute was given. The *Peerless Laundry Service* v. *City of Los Angeles*, 109 Cal.App.2d 703 [241 P.2d 269], cited by appellant, was one in which a fire truck ran over the curb and sidewalk and crashed into a building because of defective brakes, and loss of control by the driver. The court stated that the defective brakes plus the driver's relaxation of vigilance could be found to be negligence which was not the result of the disregard of any regulation as to which the driver was given immunity by section 454. The case then went on to point out that section 454 was never intended to apply to this type of situation, since screaming sirens and flashing red lamps could not help respondent protect his building against such an accident. Obviously the statute was intended to open a path *on the street*

for emergency-bound vehicles which would be free of pedestrians and vehicles. This case is clearly distinguishable from the case now before the court. Furthermore, as noted above, the failure to keep a proper lookout was held by the Supreme Court in *Reed* v. *Simpson, supra,* to be one of the rules of the road to which the exemption applies.

■ Appellant claims that prejudicial error was committed in instructing the jury that the expression "with due regard for the safety of all persons using the highway" as used in Vehicle Code, section 454, subdivision (b), means *only* that the driver of an emergency vehicle must, by suitable warning, give others a reasonable opportunity to yield the right of way. The court in defining "with due regard for the safety of all other persons using the highway" as used in section 454, instructed that it meant that the driver of an emergency vehicle must, by suitable warning, give others a reasonable opportunity to yield the right of way. ■ The court instructed, "The giving of the audible signal by siren and the display of a red light visible from the front is the measure of care on the part of the operator of the emergency vehicle, and if this is done his duty of care is performed, subject to the limitation that he may not make an arbitrary exercise of the privileges given him by the exemption." That the above instruction is a correct statement of the law cannot be doubted. The expression "with due regard for the safety of all persons using the highway" has been thus defined in *Lucas* v. *City of Los Angeles,* 10 Cal.2d 476, 483 [75 P.2d 599]; *Raynor* v. *City of Arcata,* 11 Cal.2d 113, 117 [77 P.2d 1054]; *Reed* v. *Simpson,* 32 Cal.2d 444, 449-450 [196 P.2d 895].

Appellant maintains that the last clear chance doctrine as applied to Vehicle Code, section 454 cases is not limited to the doctrine of discovered peril but is applicable where the driver of an emergency vehicle could have and should have seen that a collision could be prevented only in the event that he took immediate action. He cites language from *Washington* v. *City & County of San Francisco,* 123 Cal.App.2d 235 [266 P.2d 828], a case in which a bystander was injured when a police car and another collided and were thrown against him. Judgment was had against the city and the driver of the other vehicle. The briefs in this case show that the city's argument that the instruction as to last clear chance was erroneously given, was based on the fact that although there was evidence that the driver of the police car saw the

other car before the collision, the time element was too short to give him a last *clear* chance. The instruction complained of therein was practically identical with the instruction in this case to the effect that there is an arbitrary exercise of the privilege granted by section 454, (1) if the vehicle is not being operated in relation to an emergency and under circumstances that would entitle it to the exemption; (2) that "after seeing that some other person has not heard or heeded the warning given . . . or seeing that there is no way in which any other person can reasonably be expected to prevent a collision, the driver of the emergency vehicle nevertheless, having both the means and reasonable opportunity to avoid such a result, proximately causes an accident producing injury to another." It is therefore clear, that the instruction given in the cited case, did limit the jury's consideration to situations of discovered peril, and that this is the correct rule is settled by the Supreme Court decisions heretofore cited. The court did make a statement in the Washington case to the effect that on the evidence before it the court could not say as a matter of law that the jury could not have believed that by the exercise of ordinary care the driver of the police car could have and should have seen the other car and have observed that the driver was making no effort to slow down and that there would be a collision unless some immediate action were taken. Regardless of this language, the last clear chance doctrine in this state is applicable only to cases of discovered peril. (*Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 277, 282 [156 P. 51, L.R.A. 1916E 58]; *Peterson* v. *Burkhalter*, 38 Cal.2d 107, 110-111 [237 P.2d 977].) In the Washington case there was also substantial evidence that the police car was not on an emergency call. The fact that a hearing was denied by the Supreme Court does not give blanket approval to all of the language used in the opinion of the District Court of Appeal.

It is argued that the last clear chance instruction given by the trial court subsequent to the earlier instruction concerning arbitrary exercise of the privilege, which was in the nature of last clear chance, did not cure the error in the earlier instruction. However, as determined above, there was no error in that instruction. There was evidence, though perhaps slight, that would have justified the usual last clear chance instruction. If the jury decided that appellant's evidence that he heard no siren as he approached the intersection was to be accepted by them as evidence that none was then being sounded,

the exemption would not apply and the usual rules of the road would be in effect. If the jury presumed that the driver of the car was within Machado's clear range of vision, that Machado saw that the automobile would not stop in time to avoid a collision and that he was traveling at 8 or 10 miles per hour and could have stopped in time, the last clear chance instruction could properly be given. ▪ The instruction given was, however, incorrect in that it told the jury that "if the defendant had, *or by the exercise of ordinary care ought to have had*, actual knowledge of plaintiff's perilous situation," the remainder of the instruction applied. ▪ The law in this state is that the defendant *has knowledge* that plaintiff is in a position of peril, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape. (*Peterson* v. *Burkhalter*, 38 Cal.2d 107, 110 [237 P.2d 977].) ▪ While the instruction was in this respect erroneous, the error was in favor of appellant. Furthermore, appellant cannot complain when he asked for an instruction on the last clear chance doctrine which, though refused, was erroneous in the same respect.

▪ The following instruction is complained of as constituting prejudicial error: "There is a negligent operation of an authorized emergency vehicle responding to an emergency call only where the driver of such vehicle fails to give a timely warning or otherwise makes an arbitrary exercise of the exemption from the rules of the road which can be said to be wilful misconduct." In *Lucas* v. *City of Los Angeles, supra*, an arbitrary exercise of the statutory privilege was stated to be a charge simliar to the charge of "wilful misconduct." It then discussed the elements of such conduct as being something greater than gross negligence, quasi criminal in nature, the intentional doing of something with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of the possible consequences. This was reaffirmed in *Raynor* v. *City of Arcata, supra*, at page 118. We find no error in the instruction.

▪ Finally, it is contended that there was no substantial evidence in the record that would support a finding of contributory negligence on the part of appellant. There was evidence that appellant heard a siren when he was at the crest of the hill; that almost all traffic at the Alto Wye intersection had come to a halt; that despite the fact that he heard a siren a short while before, he did not slacken his speed; that although because of the physical evidence that appellant ran into the

left front side of the slower moving truck which must have entered the intersection first, appellant did not apply his brakes. There was abundant evidence from which the jury could have concluded that appellant was negligently inattentive in not hearing the siren just prior to the collision, and that he was not keeping a proper lookout.

There was no error committed by the trial court which was in any way prejudicial to appellant. Accordingly, the judgment must be affirmed.

Judgment affirmed.

Dooling, Acting P. J., and Draper, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.