[Civ. No. 18344.  First Dist., Div. Two.  May 26, 1959.]

LOLA E. ROBERTS, Appellant, v. JOSEPHINE E. PATTERSON et al., Respondents.

662

Russell F. King for Appellant.

Joseph F. Rankin and Robert L. Anderson for Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment in favor of the defendants, rendered on a jury verdict in an action for personal injuries sustained by a tenant, plaintiff Lola Roberts, who tripped over a rug in the common hallway of an apartment house owned and operated by the defendants. It is argued on appeal that the trial court erroneously withheld certain evidence from the jury and erred in certain of its instructions to the jury.

The appeal is on a settled statement which reveals the following facts: Defendants Josephine E. Patterson* and Oliver A. Fox were the owners of the Carlson Apartments located at 138 Carlson Avenue in Richmond. Under an agreement between the owners and defendants, Maurice and Louis Hammond, defendant Joyce Hammond and her husband Louis took over the management of the Carlson Apartments, a T-shaped building containing 40 units, located on an irregular corner, bounded on the south by Center Street; on the west by Carlson Avenue; and on the north by Ohio Street. The bottom (north) of the perpendicular portion of the T is closest to Ohio Street. The corner formed by Carlson and Ohio Streets is a surfaced parking lot for the tenants of the building. At the junction of the cross-bar and perpendicular portion of the T closest to this parking lot, there is an entrance commonly referred to as the "middle" entrance. On the Carlson side of the parking lot, just a few steps from the middle entrance, there is an incinerator provided for the convenience of the

---

*As Mrs. Patterson was a resident of Illinois and no personal service was secured, the action was dismissed as to her.

tenants. There are also entrances to the building at Ohio Street, Center Street, and a main entrance facing Carlson Avenue. The floor level of the premises is approximately 18 to 24 inches above ground level. The Ohio Street doorway, where the accident occurred, is reached by climbing three steps to the top of a concrete porch which is approximately the same height as the floor level of the premises.

Plaintiff had been the manager of the apartments for three years before October 6, 1956. At the time of the accident, the plaintiff occupied a ground floor apartment on the straight hallway connecting the Ohio Street entrance to a cross-hallway bisecting the cross-bar of the T. Plaintiff's apartment was close to the middle entrance. About 10 a. m. on the morning of Sunday, October 28, 1956, plaintiff went out the middle entrance with a metal basket to empty some waste paper into the incinerator. While there, she saw a tenant in the parking lot and went over to talk to him. Then she entered the building at the Ohio Street entrance. She opened the door with her left hand, started to walk in and her foot "hit something." She fell forward and threw her hands up violently releasing the empty waste basket. This jerking motion caused her to fall backwards. She fell with her back to the door a few inches from the threshold and then realized she was sitting on a bluish-colored rug which had been folded in front of the door. She stated that the rug was a few inches from the threshold, but she did not know whether it was in this position before she fell.

Plaintiff stated definitely that she had not seen the rug before her fall. The last time she had used the Ohio Street entrance was on the preceding Friday night. In response to a question, plaintiff presumed she had been looking straight down the hallway as she stepped through the doorway and not directly at her feet. She could not describe how many steps she had taken into the hallway or how far from the door she was when she slipped. After she fell, she was about two feet inside the door. One of the other tenants, Mrs. Rathers, heard the noise of the falling waste basket, opened the door of her apartment and looked out. Mrs. Rathers asked the plaintiff what happened. Plaintiff replied: "I tripped over this damn rug," and called Mrs. Rathers' attention to the rug on the floor. Plaintiff further testified that in her three years as manager of the apartment house she became thoroughly familiar with all of the entrances and exits and that during those three years, rugs, floor or door mats had not been used in

connection with any of the entrances. It is admitted that plaintiff's status is that of an invitee.

Defendant Joyce Hammond testified that plaintiff had no particular ill-feeling or resentment toward her, and that plaintiff had on request volunteered information and advice about the management of the Carlson Apartments. On a day following a heavy rain, Mrs. Hammond noticed heavy puddles of water and mud inside the Ohio Street entrance. Fearing that people might slip and fall, she placed a rug inside the Ohio Street entrance on both the ground floor and the second floor. The rugs she used were the property of the apartment and obtained from a storage room. The rug at the scene of the accident was a blue and white cotton and wool rug, which had been folded once with the fold placed closest to the threshold of the door. When unfolded, the rug was ⅓ of an inch thick. When folded over, the rug lay flat and there was no perceptible roll or bulge at the point of the fold. After placing the rug inside the entrance, Mrs. Hammond never specifically inspected it.

Mrs. Hammond could not remember exactly when the rugs had been placed at the Ohio Street entrance, but was certain that it was on a day following a heavy rain. She was sure it was not less than 10 days but not more than two weeks before the accident, probably sometime after October 15, 1956. No witness could remember exactly when it had rained before the accident. Official rainfall records kept at the Richmond City Hall (which is less than one-third of a mile from the scene of the accident) showed that there had been no measurable rainfall on Sunday, October 28. It had rained .01 inches on October 27; .19 inches on October 26 between twelve noon and 4:30 p. m., and .05 inches on October 12th.

There is some conflicting evidence about the height of the threshold. Defendant Fox testified that the threshold was from ½ to ¾ths of an inch higher than the hallway floor and was one inch higher than the outside concrete porch. Plaintiff produced photographs taken concurrently with Mr. Fox's measurements. The photographs indicated that the threshold was badly worn in the area closest to the parking lot and that the height of the threshold varied between ¼ and ½ inches above the level of the hallway.

Plaintiff's first contention on appeal is that the trial court erroneously withheld certain evidence from the jury by sustaining defendant's objection to the following question asked Mrs. Hammond on cross-examination (Code Civ. Proc., § 2055):

"Q. Now, Mrs. Hammond, at the time you put this rug down, is it not true that you realized that this rug would be a hazard, or could be a hazard to people coming in or out of that Ohio Street entrance?"

The objection was sustained on the ground that the question invaded the province of the jury as to the issue of whether this was negligence. Then some material from Mrs. Hammond's deposition, including the following, was read to the jury:

"Question. And as this rug was placed there bent over or rolled over, as you say would the height of the roll itself be higher than the threshold of the door?

"Answer. No.

"Question. It would be below the level or equal with it, or just where; how would you put it?

"Answer. It wouldn't be above the threshold. Whether it was below or not, I don't know. I walked over it and made sure; I walked over the fold of the rug to make sure it would be at least even with the threshold.

"Question. I take it, then, that at the time you put this rug out you were conscious of the possibility that somebody might trip or slip over it?

"Answer. I didn't believe anyone would slip over it."

Plaintiff argues that she was prejudiced by being prevented from showing by direct testimony the state of mind and knowledge of Mrs. Hammond in creating a dangerous condition. Plaintiff cites *Cope* v. *Davison,* 30 Cal.2d 193 at 200 [180 P.2d 873, 171 A.L.R. 667], for the rule that the state of mind of a person is a fact to be proved like any other fact when it is relevant to the issue. That case, however, was an action by a guest against the driver of an automobile and involved wilful misconduct. The other authorities cited by the plaintiff, similarly concern situations where knowledge or state of mind were in issue.

Plaintiff's action here is based on the alleged negligence of the defendants in maintaining a dangerous or defective condition in the common hallway of an apartment building, owned and operated by the defendants and where the plaintiff resided. It is conceded that defendants' duties to the plaintiff are those owed to an invitee, and that in placing the rug in the hallway, Mrs. Hammond was acting in the course and scope of her employment as the agent of the other defendants. There are no issues on appeal as to the damage suffered by the plaintiff or the presence of the rug. The only issues to be determined by the jury was whether in placing the rug in

the hallway, the defendants had violated their duty to the plaintiff to refrain from active negligence, to exercise ordinary care to keep the premises in a condition reasonably safe for the invitee in the reasonable pursuit of a purpose embraced within the invitation. (*Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 216 [331 P.2d 617].)

■ The applicable rule here is that ". . . whenever the question to be determined is the result of the common experiences of all men of ordinary education, or is to be inferred from particular facts, the inference is to be drawn by the jury, and not by the witness." (*Parkin* v. *Grayson-Owen Co.*, 157 Cal. 41, 44 [106 P. 210]; 19 Cal.Jur.2d § 284, p. 8.) See also *Kauffman* v. *Maier*, 94 Cal. 269 [29 P. 481, 18 L.R.A. 124], where the asking of a question calling for an opinion as to whether a particular condition was dangerous was held to be error, and *Sampson* v. *Hughes*, 147 Cal. 62 [81 P. 292], which held that a question put to the defendant calling for his opinion as to whether or not his acts were negligent, was erroneous and should not be permitted.) ■ It follows that the trial court correctly sustained the objection to the question.

■ Plaintiff's second contention on appeal is that the instructions to the jury on the doctrine "to look is to see" were erroneous and prejudicial. The court first gave a general instruction as follows:

"There are certain fundamental principles applicable to cases of this nature which the law imposes and which are based on common sense, among which are the following:

"1. One cannot go from a place of safety into a place of danger without using his or her eyes and ears, to see or hear anything that might be a source of danger to such person. If the danger is visible and obvious the law will presume that a person possessing the normal faculties of sight and hearing must have seen and heard that which was within range of his sight and hearing and that he had knowledge of such danger, if any."

The plaintiff's cause of action was based upon the theory that in placing the rug over which plaintiff tripped at the threshold in the manner in which it was placed defendants had created a *dangerous condition* which proximately caused plaintiff's fall and consequent injuries. When the court told the jury without qualification: "One cannot go from a place of safety into a place of danger without using his or her eyes and ears, to see or hear anything that might be a source of

danger to such person," as applied to the facts of this case the court said in effect: "The plaintiff could not enter this building where there was a *dangerous rug* without using her eyes to see the *dangerous rug.*" When the court added: "If the danger is visible and obvious the law will presume that a person possessing the normal faculties of sight . . . must have seen . . . that which was within range of his sight . . . and that he had knowledge of such danger . . .," the court in effect told the jury: "If the *dangerous rug* was visible and obvious the law will presume that the plaintiff must have seen the dangerous rug and had knowledge of the danger."

The court coupled this with two instructions on the effect of the presumption so declared: 1. "These presumptions are denominated rebuttable or disputable presumptions and are satisfactory evidence if uncontradicted by other satisfactory evidence in the case." 2. "A presumption is a deduction which the law expressly directs to be made from particular facts. Unless declared by law to be conclusive, it may be controverted by other evidence, direct or indirect; but unless so controverted, the jury is bound to find in accordance with the presumption."

The court thus threw into the scale on the side of the defendants a rebuttable presumption of knowledge of the danger since the position of the rug on the floor was admittedly plainly visible. This was an additional error since even if correct otherwise, which it was not as applied to the facts of this case, the facts stated in the instruction would at most justify the jury in drawing an inference of knowledge and would not create a legal presumption. (*Cucuk* v. *Payne,* 140 Cal.App.2d 881, 890 [296 P.2d 7].)

This only aggravated the basic error, however, which lies in the assumption that a pedestrian is bound to anticipate and be on guard against dangers in walking over an area designed for pedestrian use. The rule is just the contrary. In *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55] (a case in which the dangerous condition was an open and extensive depression in the sidewalk to permit entry to a private garage, and hence more obviously dangerous than a rug on a floor) the court said: "It is well settled that, in the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is

not required to keep his eyes fixed on the ground or to be on a constant lookout for danger. [Citing cases.] [P. 424.] . . . Whether plaintiff made reasonable use of her faculties and whether she should have observed the condition which caused her injury were questions of fact. [Citing cases.] [P. 425.] . . . She obviously cannot be held to examine the sidewalk with the same care which would be required of the city in discharging its duty of inspection. [Citing cases.] [P. 427.] . . . On the other hand, as we have seen, in the absence of knowledge to the contrary, a pedestrian is entitled to assume that a sidewalk is reasonably safe and is not required to be on a constant lookout for defective conditions. As stated in *Hanson* v. *City of Anamosa,* 177 Iowa 101 [158 N.W. 591 at 594], 'A pedestrian using the streets is not bound to constitute himself an inspector of walks.' " (P. 428.)

Erroneously affording defendants the benefit of this presumption may well "have tipped the scale" in their favor. (*Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 222 [331 P.2d 617].)

We are convinced that under the rule announced in the Peters case and the cases cited therein the giving of this instruction under the factual situation existing in this case was misleading, erroneous and prejudicial.

■ The second instruction attacked by the plaintiff (Defendant's Instruction 11, Reporter's Transcript p. 52) is clearly erroneous because of the addition of the words "or did not look." The record, however, indicates that in chambers, immediately before the argument plaintiff objected to this instruction. After the trial court indicated that he would give the instruction as proposed with the addition of the words "If the jury finds the rug was clearly visible," plaintiff withdrew all objections. By withdrawing all objections, the plaintiff waived the further error just as if she had requested an instruction involving the same error. (*Colbert* v. *Borland,* 147 Cal.App.2d 704 [306 P.2d 53] ; *Davidson* v. *Marin County,* 147 Cal.App.2d 54 [304 P.2d 743] ; *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 P. 772].)

We conclude that the judgment must be reversed because of the erroneous general instructions.

Judgment reversed.

Dooling, J., and Draper, J., concurred.