[L. A. No. 25725. In Bank. July 12, 1960.]

DOROTHY D. WEST, an Incompetent Person, etc., et al., Respondents, v. CITY OF SAN DIEGO, Appellant.

Jean F. DuPaul, City Attorney, Raymond F. Moats, Jr., Deputy, McInnis, Focht & Fitzgerald and William T. Fitzgerald for Appellant.

Enright, von Kalinowski & Levitt, Jack R. Levitt and Gordon E. von Kalinowski for Respondents.

GIBSON, C. J.—Dorothy West was seriously injured and rendered incompetent as the result of a collision between an automobile she was driving and one operated by a police

officer, who was killed in the accident. Her husband, as
guardian ad litem, brought suit in her behalf against defend-
ant, the officer's employer, to recover damages for the injuries
she sustained, and in addition he sought redress for himself,
alleging permanent loss of his wife's services and of non-
economic aspects of the marriage relationship usually referred
to as "consortium." The jury returned a verdict for plain-
tiffs, awarding $57,828.89 to the wife and $5,000 to the hus-
band. Defendant contends that, by reason of the instructions
given by the court, the jury was misled as to the effect of the
prima facie speed limit and the privileges of a driver of an
emergency vehicle. It is also contended that Mr. West was
erroneously awarded damages for loss of consortium.

The accident occurred during the early afternoon of a
clear, dry day in San Diego County on a portion of Highway
101 running north and south. The highway was marked for
four lanes of traffic, two in each direction, and there was a
raised island in the center. Defendant's police car was travel-
ing in the outside northbound lane at a rate of speed vari-
ously estimated as between 60 and 85 miles per hour when the
officer apparently lost control of the vehicle. It veered across
the inside northbound lane, jumped over the center island,
and struck three vehicles, demolishing the one driven by Mrs.
West, who was using the inside southbound lane. The evidence
was conflicting as to whether the officer was in pursuit of a
speeder at the time of the accident and whether he was sound-
ing the police car's siren and shining its red light. Conflicting
inferences could also be drawn as to whether there was a ve-
hicle slightly ahead of the officer in the northbound lane to his
left and whether, if so, it suddenly moved to the outside lane
directly in front of the officer and caused him to lose control
of the police car.

The jury was instructed: "The basic speed law of
this State, as provided by Section 510 of our Vehicle Code,
is as follows: 'No person shall drive a vehicle upon a highway
at a speed greater than is reasonable or prudent, having due
regard for the traffic on, and the surface and width of, the
highway, and in no event at a speed which endangers the
safety of persons or property.' Prima facie speed limit that
was in effect at the time and place of the accident involved
in this case was fifty-five miles an hour."[1] Defendant argues
that the jurors may have been unaware of the quotation marks

---

[1] The provisions of section 510 are now found in section 22350 of the
Vehicle Code, as recodified in 1959.

appearing in the instruction, and may therefore have understood the statement concerning the prima facie speed limit to be a part of section 510. However, the statement referred specifically to "the time and place of the accident involved in this case" and could not reasonably have been interpreted as being part of a statute. Moreover, we cannot assume that the court failed to indicate to the jury, by a pause or otherwise, where the text of section 510 ended.

It is also argued that the jury was erroneously instructed with respect to the privileges of the driver of an authorized emergency vehicle. The court covered this subject at some length in its instructions, one of which set forth the provisions of former section 454 of the Vehicle Code, which, so far as pertinent here, provided that such a driver, when in pursuit of an actual or suspected violator of the law, was exempt from various traffic regulations, including those relating to speed, if he sounded a siren as reasonably necessary and displayed a red light visible from the front, but that the statute did not protect him from the consequences of an arbitrary exercise of the privileges conferred.[2] At defendant's request the jury was told that the term "arbitrary exercise of the privileges" has restricted meaning and that such an exercise takes place only when the driver of an emergency vehicle does something that would constitute negligence in the absence of the exemption and when, in addition, certain specified circumstances exist. At plaintiffs' request the court gave the following instruction, which also dealt with the effect of the statutory provision regarding an arbitrary exercise of the privileges: "Section 454 of the Vehicle Code provides: The driver of a motor vehicle could be guilty of wilful misconduct in doing no wrong except driving at a speed which in the attendant circumstances would be excessive and reckless, provided either that in so driving he had knowledge that serious injury to another probably would result, or that he drove at such speed with a wanton and reckless disregard of the possible results. 'and speed alone may constitute an arbitrary exercise of the privileges extended by Section 454 of the Vehicle Code.' "[3] In the next instruction the jury was told that if

---

[2] The provisions of section 454 were changed when the Vehicle Code was recodified in 1959 and are now found in sections 21055 and 21056.

[3] The portion of the instruction requested by plaintiffs which appears within single quotation marks is contained in a separate paragraph. As indicated, it is preceded by a period after the word "results" and the first word "and" is not capitalized.

a party to the action violated "the statute just read to you," a presumption of negligence arose which was not conclusive but could be overcome by evidence that his conduct was reasonably excusable.

Defendant contends that the statement concerning speed "alone," in the instruction given at plaintiffs' request, when taken together with the instruction given immediately thereafter, may have caused the jury to understand that in spite of the statutory privileges, a verdict against defendant was warranted by the mere fact of a high rate of speed, without regard to the surrounding circumstances. However, the instructions, when reasonably construed as a whole, informed the jury that speed alone, that is, without any other act, might or might not constitute an arbitrary exercise of the privileges depending upon the surrounding circumstances. Before the statement about speed "alone," the challenged instruction referred to speed "in the attendant circumstances," and the conjunction "and" was used between the two parts of the instruction. Moreover, the instruction given at defendant's request emphasized that whether an arbitrary exercise occurs must be determined in the light of the circumstances, and, with respect to vehicles in general, another instruction pointed out that speed "considered as an isolated fact and simply in terms of so many miles an hour" was not proof of negligence and that whether a particular rate of speed was negligence depended on all the circumstances.[4]

It is further asserted that the reference to "wilful misconduct" in the instruction given at plaintiffs' request injected an extraneous issue into the case and that the jury may have believed that there was an exception to section 454 distinct from an "arbitrary exercise" of the privileges. The terms "arbitrary exercise" and "wilful misconduct" are substantially similar in meaning, where, as here, the latter term is used to describe an act performed either with knowledge that serious injury to another will probably result or with wanton and reckless disregard of the possible consequences. (*Lucas* v. *City of Los Angeles*, 10 Cal.2d 476, 486 [75 P.2d 599]; *Raynor* v. *City of Arcata*, 11 Cal.2d 113, 118 [77 P.2d 1054]; *Davidson* v. *County of Marin*, 147 Cal.App.2d 54, 62 [304 P.2d 743]; *Goldstein* v. *Rogers*, 93 Cal.App.2d

[4] At the time of the accident section 513 of the Vehicle Code (now § 40831) provided that operation of a vehicle in excess of a prima facie speed limit was not negligence as a matter of law but must be shown to have been negligence as a matter of fact. There was then no maximum speed limit as is now provided for in section 22349.

201, 207 [208 P.2d 719].) Even if we were to assume that the jury understood that two separate matters were involved, it does not appear how defendant could have been prejudiced since the jury would have been called upon to make substantially the same determinations in regard to each of the terms.

 At the request of defendant, as well as plaintiffs, the court gave instructions setting forth the rules of law governing liability in cases where the emergency vehicle privileges are not applicable. Since the evidence was conflicting as to whether the officer was entitled to the privileges, it was proper for the court to give such instructions. It may be noted that all of the instructions requested by defendant on the subject of the emergency vehicle privileges were either given by the court or substantially covered in other instructions, and defendant does not claim that any additional instruction on the subject was necessary or that the instructions on the general rules relating to the issues of negligence gave undue emphasis to that aspect of the case.

The final question is whether the court erred in instructing the jury that, if it should find Mr. West was entitled to recover damages, he should be awarded a sum that would compensate him for ''any loss of his wife's services or society.'' A doctor testified that among the severe injuries sustained by Mrs. West was ''massive brain atrophy'' which reduced her mentality to that of a child four or five years of age and that in his opinion her mental condition would not improve in the future and might worsen. She had been married to Mr. West for 10 years and was 57 years of age when she was injured. In addition to performing the usual household duties prior to the accident, she assisted him in his garage business, keeping the books, answering the telephone, and running errands.

A husband whose wife is negligently injured may recover for loss of her services. (Code Civ. Proc., § 427; *Acadia, California, Ltd.* v. *Herbert, ante,* p. 328 [5 Cal. Rptr. 686, 353 P.2d 294]; *Martin* v. *Southern Pacific Co.* 130 Cal. 285, 287 [62 P. 515]; *McKune* v. *Santa Clara V. M. & L. Co.,* 110 Cal. 480, 487 [42 P. 980]; *Tell* v. *Gibson,* 66 Cal. 247, 248-249 [5 P. 223].) However, the instruction here was not limited to ''services,'' but also related to ''society'' and thus was broad enough to permit recovery for loss of consortium.

At common law in England, based on the now outmoded theory that the wife was the husband's inferior and oc-

cupied a position in relation to him akin to that of a servant to a master, the husband, but not the wife, was allowed to recover for loss of consortium caused by negligence, and a number of American jurisdictions have followed the common law rule. (See Prosser on Torts (2d ed. 1955), 701 et seq.; 133 A.L.R. 1156, 1157; 23 A.L.R.2d 1378, 1380.) A few courts grant relief to the wife as well as to the husband. (*Hitaffer* v. *Argonne Co.*, 183 F.2d 811 [overruled on another point in *Smither & Co., Inc.* v. *Coles*, 242 F.2d 220]; *Cooney* v. *Moomaw*, 109 F.Supp. 448; *Missouri Pacific Transp. Co.* v. *Miller*, 227 Ark. 351 [299 S.W.2d 41, 45 et seq.]; *Brown* v. *Georgia-Tennessee Coaches*, 88 Ga.App. 519 [77 S.E.2d 24]; *Acuff* v. *Schmit*, 248 Iowa 272 [78 N.W.2d 480]; *Montgomery* v. *Stephan*, 359 Mich. 33 [101 N.W.2d 227].) Some jurisdictions deny recovery to both spouses. (*Lockwood* v. *Wilson H. Lee Co.*, 144 Conn. 155 [128 A.2d 330, 331]; *Bolger* v. *Boston Elevated Ry. Co.*, 205 Mass. 420 [91 N.E. 389]; *Helmstetler* v. *Duke Power Co.*, 224 N.C. 821 [32 S.E.2d 611, 613].)

In California, more than 40 years ago, the case of *Meek* v. *Pacific Electric Ry. Co.*, 175 Cal. 53, 56 [164 P. 1117], in affirming a judgment which awarded a husband damages for loss of his wife's services and for medical expenses resulting from her injuries, stated by way of dictum that a husband could not recover for loss of his wife's "society, or what is termed the consortium." In the opinion the court quoted the provision contained in section 427 of the Code of Civil Procedure that "in any action brought by the husband and wife, to recover damages caused by any injury to the wife, all consequential damages suffered or sustained by the husband alone, including loss of the services of his said wife, moneys expended and indebtedness incurred by reason of such injury to his said wife, may be alleged and recovered without separately stating such cause of action." The statement excluding recovery for loss of consortium was thus made in the light of the statute and amounted to a construction of the phrase "consequential damages" as referring only to damages of an economic character, for example, medical expenses and loss of services. This construction is reasonable, particularly since none of the items listed in the section after the word "including" is of the noneconomic type coming within the term "consortium." It may be noted that, before the provision was enacted, courts had used the words "consequential damages" to describe a husband's medical expenses and loss

of services. (*Tell* v. *Gibson*, 66 Cal. 247, 248 [5 P. 223]; *Matthew* v. *Central Pac. R. R. Co.*, 63 Cal. 450, 451.)

The dictum in *Meek* v. *Pacific Electric Ry. Co.*, 175 Cal. 53, 56 [164 P. 1117], was unquestioned as the law of this state until 1955, when *Gist* v. *French*, 136 Cal.App.2d 247 [288 P.2d 1003], was decided. It was held in the Gist case that a husband whose wife had been negligently injured could recover not only for loss of services but also for loss of cohabitation and society, and it was suggested in the opinion that a wife should also be allowed to recover for loss of consortium (136 Cal.App.2d at pp. 255-257). In 1958 this court was called upon to consider the question of recovery for loss of consortium in *Deshotel* v. *Atchison, T. & S. F. Ry. Co.*, 50 Cal.2d 664, 667 et seq. [328 P.2d 449], where a husband had been negligently injured. We held that the wife was not entitled to recover, disapproving the dictum to the contrary in the Gist case. In so holding, we discussed the various problems of policy and procedure involved. For example, there is a danger of double recovery, and the loss of such things as companionship and society is indirect only and is difficult to measure in terms of money. If, in the absence of statute, a cause of action in the wife were recognized, courts would be faced with the perplexing task of determining where to draw the line with respect to similar claims by others having a close relationship to the one injured. We concluded that the Legislature rather than the courts could best deal with these problems and determine whether the wife should be allowed relief. It was pointed out that some of the objections to an action by the wife apply with equal force to one by the husband and that legislation in this field with respect to the husband as well as the wife would be preferable to piecemeal determination of the problems by judicial decision.

There is no sound reason to depart here from the principle that the Legislature is the proper body to decide whether recovery for loss of consortium should be permitted and, if so, under what terms and conditions. Drawing a distinction between spouses on the ground that the husband, unlike the wife, had a right of recovery at common law would be extremely inequitable and, further, would ignore the fact that recognition of his right was based upon the wife's subservient position in the marriage relationship whereas, under present-day law, spouses are generally regarded as equals. Nor is such recovery warranted by the provisions of

section 3333 of the Civil Code.[5] That section merely deals in general terms with the subject of damages in tort cases, and is of no assistance where, as here, the question is whether a particular type of liability is to be judicially recognized in view of the problems of policy and procedure involved. It should also be noted, as stated in *Deshotel* v. *Atchison, T. & S. F. Ry. Co.,* 50 Cal.2d 664, 669 [328 P.2d 449], that wrongful death cases are not in point since they were decided under a special statute. *Meek* v. *Pacific Electric Ry. Co.,* 175 Cal. 53, 56 [164 P. 1117], correctly states the law applicable to both spouses, and the contrary holding in *Gist* v. *French,* 136 Cal.App.2d 247, 255 [288 P.2d 1003], is disapproved.

In view of the instruction which erroneously permitted the jury to award damages for loss of consortium, the $5,000 verdict in favor of Mr. West may have included such an allowance, and, since the extent to which this may have been true cannot be ascertained, the judgment must be set aside insofar as it is in his favor. It will not be necessary, however, to retry the issue of liability in order to determine the amount of damages properly allowable to him.

As to Mrs. West the judgment is affirmed; as to Mr. West it is reversed with directions to retry the issue of damages alone and to enter judgment in accordance with the determination of that issue. Plaintiffs are to recover costs on appeal.

Traynor, J., White, J., and Dooling, J., concurred.

DOOLING, J., Concurring.—Since I wrote the opinion for the District Court of Appeal in *Deshotel* v. *Atchison, Topeka & Santa Fe Ry. Co.,* (Cal.App.) 319 P.2d 357, in which that court held that the wife had a right of action for loss of consortium (hearing granted and opposite conclusion declared by this court, *Deshotel* v. *Atchison, T. & S. F. Ry. Co.,* 50 Cal.2d 664 [328 P.2d 449]), a brief explanation seems justified of my concurrence in the conclusion that the husband has no such right. The District Court of Appeal in *Deshotel* accepted *Gist* v. *French,* 136 Cal.App.2d 247 [288 P.2d 1003], as conclusively settling the law that the husband did have a right of action for loss of consortium of his wife; and it

___

[5]Section 3333 of the Civil Code provides: ''For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

concluded, in view of the modern concept of our law, which recognizes so completely the separate personality of the wife, that her rights in that respect should be no different from her husband's. We were not faced in Deshotel with the question of the husband's right to sue for loss of consortium, since we considered that question settled by Gist. Now that this court is reexamining that question, I am satisfied with the conclusion that under our statutory law, the husband has no such right and that *Gist* v. *French, supra,* should be disapproved.

SCHAUER, J., Concurring and Dissenting.—In my view the opinion prepared for the District Court of Appeal by Justice Mussell and concurred in by Presiding Justice Griffin and Justice Shepard, reported in (Cal.App.) 346 P.2d 479, correctly resolves all of the issues presented on this appeal. This leads to the conclusion that the judgment of the trial court should be reversed as to both Mr. West and Mrs. West.

The opinion of the Chief Justice reverses solely as to Mr. West, and as to him, only to retry the issue of damages because the trial court had erroneously instructed the jury that it could award damages to him for loss of his wife's consortium. I concur with both the opinion and the conclusion of the Chief Justice as to this phase of the case.

As to other elements of the case, however, I am persuaded that serious error in the instructions precluded the defendant from having a fair trial. As stated by Justice Mussell in the opinion prepared for the District Court of Appeal, ''Appellant's first contention on appeal is that the trial court erred in its instructions to the jury on the emergency vehicle privilege. The record shows that 81 instructions were read to the jury (Rep. Tr., pp. 700-759) and that many of these instructions dealt with the rules applicable to liability for negligent acts without consideration of the emergency vehicle privilege. For example, in instruction No. 32 the court said: 'If by a preponderance of evidence it has been proved that any negligent conduct on the part of the defendant was a proximate cause of an injury in question, such proof is sufficient to establish liability.' In instruction No. 39, in stating the issues to be determined by the jury, no mention was made by the court of the issue involving the emergency vehicle privilege. In instruction No. 52 the jury was instructed that: '' 'The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many

miles an hour, is not proof either of negligence or of the exercise of ordinary care.

" 'Whether that rate of speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances.

" 'The basic speed law of this State, as provided by Section 510 of our Vehicle Code, is as follows:

" ' "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

" 'Prima facie speed limit that was in effect at the time and place of the accident involved in this case was fifty-five miles an hour.'

"Instruction No. 56 was as follows:

" 'Section 454 of the Vehicle Code provides:

" 'The driver of a motor vehicle could be guilty of wilful misconduct in doing no wrong except driving at a speed which in the attendant circumstances would be excessive and reckless, provided either that in so driving he had knowledge that serious injury to another probably would result, or that he drove at such speed with a wanton and reckless disregard of the possible results.

" ' "and speed alone may constitute an arbitrary exercise of the privileges extended by Section 454 of the Vehicle Code." '

"It is apparent that the trial court did not correctly state the provisions of section 454 of the Vehicle Code in this connection. This section provides as follows:

" 'The driver of an authorized emergency vehicle shall be exempt from those provisions of this code herein set forth under the following conditions:

" '(a) Said exemptions shall apply whenever any said vehicle is being driven in response to an emergency call or when used in the immediate pursuit of an actual or suspected violator of the law, or when responding to but not upon returning from a fire alarm.

" '(b) Said exemptions shall apply only when the driver of said vehicle sounds a siren as may be reasonably necessary and the vehicle displays a lighted red lamp visible from the front as a warning to others. Under the circumstances hereinabove stated, any said driver shall not be required to observe those regulations contained in Chapter 3 or in Chapters 6

to and including Chapter 13 of Division 9 or Section 604 of this code, but said exemptions shall not relieve the driver of any said vehicle from the duty to drive with due regard for the safety of all persons using the highway, nor shall the provisions of this section protect any such driver from the consequences of an arbitrary exercise of the privileges declared in this section.'

"In instruction No. 57 the jury was told that 'if a party violated the statute just read to you, a presumption arises that he was negligent.' It does not appear that the statute [§ 454] was in fact [just] read to the jury as stated, and it further appears that the jury was informed that 'speed alone may constitute an arbitrary exercise of the privileges extended by section 454 of the Vehicle Code.' It is apparent that the trial court informed the jury that speed alone, despite the fact of the exemption granted by the statute, may constitute negligence. This, we conclude, was reversible error. . . . While it is true that in another instruction the trial court properly instructed the jury with reference to the meaning of the phrase 'arbitrary exercise of the privilege' and as to the effect of the exemption statute, it cannot be determined whether the verdict was reached upon the basis of the criticized instructions or upon the later instructions given. As is said in *Francis* v. *City & County of San Francisco*, 44 Cal.2d 335, 341 [282 P.2d 496] :

" 'The giving of an erroneous instruction is not cured by the giving of other correct instructions where the effect is simply to produce a clear conflict in the instructions and it is not possible to know which instruction was followed by the jury in arriving at a verdict.' "

Inspection of the record shows, further, that of the 81 instructions read to the jury, the subject of emergency vehicles was not mentioned until near the end, in instructions 64 through 67. All subsequent instructions dealt with damages and with conduct of the jury's deliberations. For this additional reason, it appears to me that the court prejudicially overemphasized to the jury the issues of negligence as compared to those having to do with emergency vehicles.

For the reasons indicated I would reverse the judgment in its entirety and remand the cause for a new trial.

McComb, J., concurred.

PETERS, J., Concurring and Dissenting.—I concur with that portion of the opinion prepared by the Chief Justice

holding that the judgment in favor of Dorothy West should be affirmed. I dissent from that portion of the opinion reversing the judgment in favor of her husband, Mert West.

The majority, in concluding that the judgment as to Mert West should be reversed, hold that, in this state, a husband has no cause of action for the negligent interference with those noneconomic aspects of marriage usually included within the term "consortium." Stated another way, the majority hold that a husband, in this state, is not entitled to recover on his own behalf for a negligent injury to his wife that results in depriving him of his privilege of sexual intercourse with his wife, of the possibility of becoming a father, and of the right to the society, care and comfort of his wife. This holding is unrealistic and unsound.

A large portion of our family law is devoted to protecting the spouses against intentional interference with these conjugal rights. If a wife were to deprive her husband of these rights it would, of course, be a ground for divorce. But, according to the majority, negligent interference resulting in the deprivation of these rights is not compensable! This holding is contrary to the common law, is contrary to the overwhelming weight of authority elsewhere, and is contrary to the public policy of this state.

The protection of the marriage relationship is, obviously, a matter of vital concern to the state. The producing of children is indispensable to the welfare of the state. As Professor Barbara Armstrong puts it in discussing this subject in her book California Family Law, volume 2, at page 1504: "Moreover, strong public policy stands in the way of denying a husband the right to recover for loss of consortium through negligent injury to his wife. What greater loss could a husband suffer, for example, than the destruction of normal sexual relations in his married life, and the hope of children of his own blood?"

There can be no doubt, and the majority concede, that the common-law rule was and is that a husband has such a cause of action. Such right was recognized as early as 1619 in the case of *Guy* v. *Livesey*, 79 Eng.Rep. 428. In 27 American Jurisprudence, section 501, page 100, the following statement appears, supported by many authorities: "At common law, a husband has a cause of action on the case against one who wrongfully or negligently injures his wife and thereby causes him expense and loss of consortium—per quod consortium amisit." (See also 8 Holdsworth, History of English Law

(1926), p. 430.) This rule has recently been reaffirmed in England by the House of Lords. (*Best* v. *Samuel Fox & Co. Ld.* [1952], A.C. 716.)

The overwhelming weight of authority in this country (referred to in the majority opinion as ''a number of American jurisdictions'') is to the effect that a husband has such a cause of action. (See many cases collected and commented on in 21 A.L.R. 1517; 133 A.L.R. 1156; see also annotations on the wife's right to such a cause of action, 5 A.L.R. 1049; 59 A.L.R. 680; 23 A.L.R.2d 1378.) The legal writers on this subject also agree that a husband should have, and in most states has, such a cause of action. (2 Armstrong, California Family Law, p. 1502; Prosser on Torts (2d ed.) pp. 698-705; 22 Mich. L. Rev. 1; 30 Columb. L. Rev. 651; 38 Harv. L. Rev. 421, 622.)

In the face of these authorities, the majority repudiate the rule, and hold that the husband is without remedy against a tort feasor who negligently interferes with these rights. One would expect that, before such a well-settled rule is repudiated by judicial fiat, strong and compelling reasons would be set forth justifying such a repudiation. We look in vain in the majority opinion for any such reasons.

The majority opinion is predicated on the false premise that such a right should not exist in the husband because the Legislature has not expressly provided for such a right. After discussing the rule that at common law the wife had no such right, and after calling attention to the fact that this court in *Deshotel* v. *Atchison, T. & S. F. Ry. Co.*, 50 Cal.2d 664 [328 P.2d 449], held that the wife has no such cause of action in this state, the majority opinion states: ''There is no sound reason to depart here from the principle that the Legislature is the proper body to decide whether recovery for loss of consortium should be permitted and, if so, under what terms and conditions.''

Apparently the majority have overlooked section 22.2 of the Civil Code, which provides: ''The common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State.''[1] If the Legislature has not seen fit to change a com-

---

[1]This provision has been in our law since 1850 (Compiled Laws of California 1850-1853, p. 186). It subsequently became section 4468 of the Political Code. In 1951 it became section 22.2 of the Civil Code (Stats. 1951, p. 1833).

mon-law rule, at least a common-law rule existing at the time this state was admitted into the Union in 1850, the courts should not repudiate such rule but should follow. (See cases collected and commented on in 10 Cal.Jur.2d, p. 651, § 2.)

Apparently, in the realization that they are repudiating a common-law rule, and that this should not be done without some good reason, the majority state that because the wife had no such right at common law it "would be extremely inequitable" to grant the right to the husband. This solicitude for symmetry in the law may be laudable but it carries little weight against a settled rule of the common law. The common law itself created this lack of symmetry. The point does not have to be labored that the law is not necessarily logical nor symmetrical. Lack of symmetry alone is no sound reason for this court, by judicial fiat, to enter into the legislative field by repudiating a common-law rule that the Legislature itself has not seen fit to repudiate. It might be pointed out that the House of Lords in *Best* v. *Samuel Fox & Co. Ld.*, *supra* [1952], A.C. 716, did not find this lack of symmetry any ground for reversing the settled common-law rule as to the husband. Moreover, it can be argued with what I submit is sounder logic, that, if symmetry is to be secured, it should be secured by holding that the wife as well as the husband is entitled to maintain such an action. Such a result refusing to follow the common-law rule to the contrary as to the wife, could be justified on the reasoning that the Legislature, by its many laws freeing women from their common-law disabilities, had evidenced an intent to place the wife in the same position as the husband so far as the right to consortium is concerned.

The majority opinion also contains an obvious *non sequitur*. It correctly points out that in *Gist* v. *French*, 136 Cal.App.2d 247 [288 P.2d 1003], the District Court of Appeal held that a husband has such a cause of action. The majority opinion fails to point out that this court denied a hearing in the Gist case without a dissenting vote. The majority opinion then correctly points out that in *Deshotel* v. *Atchison, T. & S. F. Ry. Co., supra*, 50 Cal.2d 664 [328 P.2d 449], this court, one justice dissenting, determined that the wife does not have such a cause of action. The Deshotel case, in part at least, was largely predicated on the theory that since the wife, at common law, had. no .such cause of action that, if such right were to be created, it should be created by the Legislature and not by the courts. That reasoning at least has the virtue of complying with and enforcing the common-law rule in accordance with

the mandate of section 22.2 of the Civil Code. But now, in the majority opinion of this case, the Deshotel case is relied on as authority to deny the husband a cause of action for loss of consortium by reasoning that it would be inequitable to distinguish between the husband and wife in this regard. Thus a case predicated upon the theory that the court was bound to follow the common-law rule becomes converted into a case holding that the court must now reverse a common-law rule! The fallacy in such reasoning is obvious.

The majority place great reliance on the *obiter dicta* appearing in the decision of *Meek* v. *Pacific Electric Ry. Co.*, 175 Cal. 53, 56 [164 P. 1117], to the effect that a husband has no cause of action for loss of consortium in this state, and concludes that that court in that case interpreted the words "consequential damages" appearing in section 427 of the Code of Civil Procedure as a legislative determination that damages for loss of consortium should not be allowed. This is a clear misinterpretation of the Meek case.

Neither section 427 of the Code of Civil Procedure nor the Meek case has anything to do with the determination of what damages are allowed in any action. Section 427 is the basic section on joinder of causes of action. After setting forth in nine separate subdivisions the types of causes of action that may be joined, the section provides: "Provided, however, that in any action brought by the husband and wife, to recover damages caused by any injury to the wife, all consequential damages suffered or sustained by the husband alone, including loss of the services of his said wife, moneys expended and indebtedness incurred by reason of such injury to his said wife, may be alleged and recovered without separately stating such cause of action arising out of such consequential damages suffered or sustained by the husband." Obviously, this section has nothing to do with defining causes of action or in fixing the elements of damage for any cause of action. It simply provides that the husband may join, without separately stating it, in an action brought by the husband and wife, a cause of action for "consequential damages." The section does not purport to define what is included in the term "consequential damages."

We are not required to look at and try to interpret sections of our code that have nothing to do with what items of damage are recoverable in a tort action. The Legislature has already spoken on this subject. Section 3333 of the Civil Code,

a section given only passing reference by the majority, reads as follows: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate *for all the detriment proximately caused thereby, whether it could have been anticipated or not.*" (Italics added.) This section, the basic section on the measure of damages, makes no artificial distinctions between the loss of "economic" and "noneconomic" elements of marriage. It permits recovery for "all" of the detriment "proximately caused" by the negligent act. Obviously, it is a "detriment" to be deprived of the rights and privileges included within the term "consortium," and it is also clear that such "detriment" is proximately caused by the tort. Thus, the Legislature, far from excluding such detriment, has expressly included such detriment as a recoverable element of damage.

Now to get back to the Meek case. The majority opinion refers to the following sentence from the Meek decision (175 Cal. at p. 56), (fairly and properly recognizing that the sentence is mere dicta): "The services rendered by a wife, aside from consideration of her society, or what is termed the *consortium*, damages for which are not recoverable in this state, may be and often are of such character that no witness can say what they are worth." No supporting statutory or case law is cited in support of this bald incorrect statement. Then the majority opinion states that the Meek case refers to section 427 of the Code of Civil Procedure, and concludes that the above quoted sentence "amounted to a construction of the phrase 'consequential damages' as referring only to damages of an economic character, for example, medical expenses and loss of services." Such a holding is not to be found, directly or by implication, in the Meek case. Section 427 is not referred to in that opinion for the purpose of ascertaining the meaning of the phrase "consequential damages" at all, but is referred to for an entirely different purpose, namely, for the purpose of permitting a joinder. An examination of the Meek opinion shows that the question there involved was whether in an action by a husband and wife for negligent injury to the wife the husband could properly allege and recover for medicines purchased by him for his wife, for the cost of surgical care for his wife and for the loss of her services without separately stating such cause of action. The court in discussing that problem said (175 Cal. 53 at p. 55): "Express authority for thus incorporating in one cause of

action a statement of the damages sustained by the wife on account of personal injuries with a statement of the consequential damages suffered by the husband is found in subdivision 8 of section 427 of the Code of Civil Procedure, . . .'' There is no further reference in the Meek opinion to section 427. It is obvious that this reference to the section was made in reference to joining causes of action. It is equally clear that this reference had nothing to do with determining what elements are to be included within the phrase ''consequential damages.'' The statement made later in the opinion, quoted above, to the effect that a husband cannot recover for loss of consortium had no relation at all to section 427.

The holding in the majority opinion that the instruction was erroneous which stated that if the jury decided in favor of Mr. West it should award him a sum that would compensate him for ''any loss of his wife's services or society,'' because the word ''society'' permitted recovery for loss of consortium, is also contrary to the well-settled rule in this state that damages for such loss of ''society'' are recoverable in wrongful death actions. Such actions are provided for by section 377 of the Code of Civil Procedure. That section provides that in such an action ''such damages may be given as under all the circumstances of the case, may be just.'' This language is certainly as broad as the language of section 3333 of the Civil Code permitting the claimant in a tort action to recover such ''amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.'' But, in a wrongful death action, the plaintiff may recover for the many noneconomic losses caused by the tort as well as for economic losses. This well-settled rule was stated as follows by Justice Shaw in *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713, at page 716 [106 P. 83] : ''It has been frequently held that, in determining the financial loss to the widow and infant child, resulting from the death of the husband and father, the jury may consider the financial loss accruing from the deprivation of the *society, comfort, care, and protection of the deceased,* as well as of his support.'' (Italics added.)

Thus, if one spouse is deprived of his consortium rights by reason of the tortious act of defendant that results in the death of the other spouse, recovery may be had for the loss of such consortium. But, according to the majority, if one spouse is not killed but is injured in such a way that the other is permanently deprived of such rights, then he cannot

recover for this loss! Such a distinction is artificial, absurd and unsound.

That a husband should recover under the facts of the instant case for loss of consortium is justified by reason, logic, authority, the common law, and by the public policy of this state. For these reasons I would affirm the judgment in favor of Mert West.